Sullivan, }
Oct. 28, 1901. }

BLUE MOUNTAIN FOREST ASSOCIATION v. BORROWE.

A by-law of a corporation providing that an insufficiency of income to meet disbursements may be made up by annual assessments upon the capital stock, and that any unpaid assessment shall be a charge against the delinquent interest, is binding upon a shareholder who has assented thereto.

Where the by-laws of a corporation stipulate that all stock shall be issued subject to their provisions, and that every certificate shall refer on its face thereto, the acceptance of such certificate by an original shareholder, without objection, is conclusive proof of an assent to the conditions thereby imposed.

In an action by a corporation to enforce a lien for assessments upon the capital stock, the delinquent shareholder cannot interpose the defence that a by-law which provides a method for the disposal of any interest, and under which the stock was acquired, is void as an illegal restriction upon the right of alienation.

Where the by-laws of a corporation provide that unpaid assessments upon the capital stock shall be a charge against the delinquent interest, and explicitly point out the manner in which shares shall be disposed of, no other method can be adopted for a sale of stock in the enforcement of the lien.

BILL IN EQUITY. Facts found by the court. Transferred from the November term, 1900, of the supreme court by *Parsons*, J.

The Blue Mountain Forest Association is a corporation organized by the late Austin Corbin, under chapter 152 of the General Laws, for the purpose of enabling him to conveniently manage the park owned by him, consisting of about 25,000 acres of land, including Croydon and Grantham mountains, all fenced and stocked with wild animals, located in the towns of Newport, Cornish, Croydon, and Grantham, in establishing and maintaining which he expended in the vicinity of half a million dollars. The capital stock of the association was fixed at $6,000, which was paid in by Corbin, and $5,500 was immediately repaid to him as the nominal consideration for his conveyance to the association of

the park and all its appurtenances and animals; and the sixty shares of stock were then allotted as follows: one sixth, or ten shares, to Austin Corbin; an equal amount to his wife, Hannah M. Corbin; and an equal amount to each of his four children, namely, Mary C. Champollion, Isabella C. Edgell, Annie Corbin (the present defendant), and Austin Corbin, Jr.; and said sixths were accepted by said wife and children as donations, for which no consideration has ever been paid by them. Corbin died June 4, 1896, having paid the expenses of establishing the park and maintaining it up to the time of his death.

Since his death the income of the park has been insufficient to pay the expense of maintenance. The plaintiffs apportioned the deficiency among the various six interests, and asked each holder of one sixth to pay to the association one sixth of the deficiency, in accordance with the by-laws of the association, article 12 of which is as follows: " Assessments. — In case the annual cash receipts from the property are insufficient to meet the annual disbursements for taxes and maintenance, or on any other account, such deficiency shall be met by an annual assessment upon the stock; and if any assessment shall not be paid, it shall be a charge against the delinquent interest, and shall draw interest at the rate of six per cent; and so long as such interest shall be delinquent, no one representing such delinquent shares shall have any rights to vote at meetings or upon the property of the corporation, and shall be excluded therefrom by the president, unless a majority of the other interests shall, by vote, decide to the contrary."

At a stockholders' meeting held September 13, 1897, the defendant being present, a vote was passed as follows: " *Voted,* That in order to pay the existing deficiency caused by the insufficient receipts to meet disbursements on account of the property and business of the Blue Mountain Forest Association, an assessment shall be and is hereby levied upon each of the shares of the stock of the association of $250, making the total sum of $15,000; this assessment to be payable to the treasurer within thirty days after notice to each stockholder; with the results in case of nonpayment specified in article 12 of the by-laws of the association." On September 19, 1898, and on September 11, 1899, at stockholders' meetings duly held, on account of existing deficiences similar votes were passed, calling, respectively, for $175 and $135 on each share of stock. All the stockholders have paid said sums, as above called for, upon all the shares held by them, except the defendant; and she, being duly notified, has omitted and refused to make any payment whatever. The plaintiffs admitted that they did not claim that the defendant by her presence at the first meeting, or by anything done or omitted by her at that time, was

estopped to question the validity of the assessments or her liability therefor.

Article 13 of the by-laws is as follows: " The property to be conveyed to this association is to be conveyed by Austin Corbin for a nominal consideration, and is divided between six members of his family in the following manner, to wit: Austin Corbin, Sr., one sixth; H. M. Corbin, one sixth; M. C. Champollion, one sixth; Isabella C. Edgell, one sixth; Annie Corbin, one sixth; Austin Corbin, Jr., one sixth. And as it has been so divided and stock delivered to each one of the holders for a nominal consideration, it is understood and agreed that every certificate is taken, and the several interests are held, subject to the following conditions as to sale and transfer:

" First.    Stock shall never be offered for sale except in a block representing one-sixth interest in the entire property, except with the consent of at least two thirds of the shareholders of the association.

" Second.    It shall never be offered or sold to any outside party until after it has been first offered to the association.    The price to be paid by the association for it shall not exceed, for any block of one sixth of the whole, the sum of twenty thousand dollars ($20,000), unless by a vote of at least two thirds of the shareholders it shall be deemed just to pay more.    And any holder of this one-sixth interest desiring to sell at and for that price must offer it to the association for that sum, unless two thirds of the shareholders shall consent to pay more as above provided.    No interest shall be calculated upon it.    The interest is to be sold for an even twenty thousand dollars ($20,000) to the association, if the association decides to take it and refuses to pay more as above provided.    If the association shall decline to take it, then the interest must be offered to other shareholders; and if no one or more decide to purchase at the twenty thousand dollars ($20,000), it may be sold to any person or persons who may choose to buy it, and at any price the holder of the interest chooses to sell it at.

" If the holder of any interest shall desire to sell, at least three months' notice shall be given in writing to the president of the association, with copies to all shareholders, of the desire of such party to sell, and no sale of such interest shall be made, except to the association, until after the expiration of ninety days after the serving of such notice.    If the association declines to buy, it must then be offered in writing to all the shareholders for thirty days before it shall be offered to any other person.

" Every certificate of stock shall refer on its face to the provisions of the by-laws, and shall be taken by the purchaser subject to all the by-laws and especially this latter provision relating to

sale, with the understanding that the conditions therein contained are to be enforced rigidly and in no manner to be construed liberally, it being the intention, in the organization of this association, that the property shall be held so long as possible in the members of the family of Austin Corbin and their heirs."

The defendant's certificate of stock stated that it was subject "to the terms of the original subscription, and transferable only in accordance with the by-laws of the association." No evidence was offered in support of the allegations of the bill as to an alleged contract between Austin Corbin and the several shareholders, except the by-laws of the corporation and the stock certificates. The plaintiffs claimed such contract was, as matter of law, established by this evidence; and that the defendant, having stock in the corporation, was estopped to deny its existence. If the record and certificate as matter of law establish the contract alleged in the bill between Austin Corbin and his wife and children, or if the defendant is estopped to assert the contrary, the allegation is found to be sustained; otherwise not.

The prayer of the bill is as follows:

1. That the said several sums of $2,500, and $1,750, and $1,350, with interest thereon, be adjudged to be a charge upon the aforesaid ten shares of stock in said Blue Mountain Forest Association, standing upon the books of the association in the name of the defendant.

2. That a date may be fixed on or before which the defendant shall pay such sums to the plaintiffs with interest thereon.

3. That in case of default of payment of said sums on or before such date as may be fixed, appropriate relief may be granted to the plaintiffs by a decree transferring the ownership of the aforesaid ten shares of stock from the defendant to the plaintiffs at and for the price of $20,000, as fixed in the contract aforesaid, or that such other relief may be granted as may be just.

*William E. Chandler, Hosea W. Parker*, and *Albert S. Wait*, for the plaintiffs.

*Ira Colby & Son*, for the defendant.

WALKER, J. One purpose of the founder of the park was to set aside a large tract of uncultivated land for the propagation of wild animals; and it is apparent that he deemed it essential that some degree of permanency and continuity should be given to the enterprise. He did not expend a half million dollars, as well as much valuable time and investigation, to establish and develop the park, with the expectation that upon his decease it would cease

to exist and be divided in severalty among his heirs.   He did not seek to provide for his personal pleasure and gratification alone, which might cease at any minute and which was sure to terminate in a few years.   The continuance and maintenance of the park after his death was probably the most controlling consideration that induced him to undertake its establishment.   And while the fact is not expressly found, it is a reasonable inference from the case that the members of his family who became stockholders in the plaintiff corporation knew that this was his purpose, and by accepting the stock as a gift were willing to co-operate with him.

It is also apparent that the corporation was not formed as a strictly business enterprise.   It was not expected to yield any considerable income on the original investment.   It was a private incorporated society or association of the members of a single family, formed for the purpose of conveniently managing a private park.   Whether this object might have been as conveniently accomplished by an unincorporated partnership or association of individuals, it is not necessary to determine.   The essential features of the enterprise were not made less apparent, or less binding in a legal sense upon the constituent members, by the formality of incorporation, than they would have been without that formality.   Many unincorporated bodies or associations exist which exercise powers over the members and over the common property as extensive as those possessed by similar incorporated bodies. They adopt articles of association and are governed by regulations often termed by-laws.   They also exist under corporate names and possess the attribute of indefinite continuity.   *People* v. *Coleman*, 133 N. Y. 279 ; *Liverpool Ins. Co.* v. *Massachusetts*, 10 Wall. 566 ; *Hunt* v. *Wright*, 47 N. H. 396.   Whether they are regarded as partnerships or as *quasi*-corporations, no doubt is entertained that the obligations they impose upon the members rest upon the agreement of the members.   It is their contract, express or implied, that gives legal force and effect to the by-laws to which they have assented and by which they are bound.   How far strangers to the contract are bound by such regulations presents a different question.   So far as the members are concerned, it is competent for them to make such contracts or by-laws as they desire, provided they are not repugnant to some positive rule of law or against public policy.   *Dawkins* v. *Antrobus*, 17 Ch. Div. 615 ; *Brown* v. *Stoerkel*, 74 Mich. 269, 276 ; 1 Thomp. Corp., *s.* 1047.

If the members of an unincorporated society, established by agreement, should by mutual consent become incorporated, making their original articles of agreement the charter of the corporation and readopting their old by-laws, a by-law which was bind-

ing as a contract between the unincorporated members would not be less binding as a contract between the same individuals under a corporate name. If it was competent for them to make a valid agreement with reference to a particular subject before, they are not now by the fiction of incorporation rendered incompetent to bind themselves by an identical agreement. Each member's contractual capacity is not impaired; and his assent to the terms of a corporate by-law imposes upon him the same contractual duties to the other members, represented by the corporation, as his assent to a similar regulation in an unincorporated society. Whether stockholders " are incorporated or not, their company is formed by their contract with each other, and it has such powers and duties as the law allows them to give it, and such as the law grants and imposes. . . . Neither party have any legal cause of complaint against their own agreement." *Dow* v. *Railroad*, 67 N. H. 1, 4, 5.

Upon the ground of the contractual obligations resting upon stockholders as between themselves, unincumbered with questions relating to the rights of third parties, it was held in *Costello* v. *Brewing Co.*, 69 N. H. 405, that a by-law of a corporation providing that the indebtedness of a stockholder to the corporation may be considered a lien on the shares standing in his name, to be enforced by a cancellation of such shares to the extent of the indebtedness, is binding upon a stockholder who is chargeable with knowledge of its existence. With reference to the by-laws the court say : " By them, the stockholders in effect agreed among themselves that the corporation should have a lien upon the shares of a stockholder for his indebtedness to the corporation, and his right to sell and transfer the shares should be subject to this lien ; and that the corporation, by a two-thirds vote of its directors at a regular meeting, might apply the shares at the rate of $500 each to the payment of the debt, after it had been due for three months and payment had been demanded and refused. The stockholders were mutually benefited by this agreement. It tended to protect the property, of which they were beneficiaries, from loss. No reason is apparent why these by-laws were not valid as between the stockholders. . . . The by-laws and the acts of the parties constituting a contract, the transaction would not be within the prohibition of the statute against restraint upon the free sale of shares of corporate stock."

In *New England Trust Co.* v. *Abbott*, 162 Mass. 148, 151, it is said: " The defendant contends that these by-laws are void. We have not found it necessary to consider that question, and we express no opinion upon it. We think that the case well may stand on the ground that the defendant's testator entered into an agreement with the plaintiff to do what the plaintiff now seeks to com-

pel his executor to do. It is manifest that a stockholder may make a contract with a corporation to do or not to do certain things in regard to his stock, or to waive certain rights, or to submit to certain restrictions respecting which the stockholders might have no power of compulsion over him." See other cases cited in *Costello* v. *Brewing Co., supra.*

The application of these principles to the present case is obvious. If Mr, Corbin had conveyed to the defendant an undivided sixth interest in the park, stating in the deed that it was made subject to certain terms and conditions contained in some other instrument fully described and easily accessible to the grantee, where it was provided that each one-sixth interest should be held as security for the payment of one sixth of the expenses of managing the park, and that any owner of an interest desiring to sever his connection with the association or partnership should first offer his interest for sale to his associates, no serious doubt is suggested that the terms and conditions referred to would be valid and binding upon the defendant. *Burbank* v. *Pillsbury*, 48 N. H. 475; *Emerson* v. *Mooney*, 50 N. H. 315; *Winnipesaukee Camp-Meeting Ass'n* v. *Gordon*, 63 N. H. 505. Instead of executing deeds of one sixth of the park to his wife and each of his children, one of whom was the defendant, the grantor conveyed the legal title to the land to an artificial corporate body, and gave or allotted to his wife and children in equal shares five sixths of the beneficial interest of ownership in the park, in the form of stock, "subject, however," as expressly provided in the certificates, "to the terms of the original subscription, and transferable only in accordance with the by-laws of said association." An examination of the by-laws subject to which the stock was allotted would have disclosed to the defendant the provisions which the plaintiff is seeking to enforce against her. If such provisions referred to, but not set out, in a deed would bind the grantee as a contractual obligation, nothing but the most unsubstantial technicality can be assigned as a reason for denying their contractual force when referred to, but not set out, in a certificate of corporate stock. As a by-law enacted by a majority of stockholders it may not be valid. The statute (G. L., c. 148, *ss.* 15, 16; P. S., c. 149, *ss.* 16, 17), if interpreted to mean that in a dividend-paying corporation no assessment for any purpose can be made on stock which has been fully paid, does not prevent the stockholders from contracting among themselves for an additional assessment which would be binding on all of them, if all assented to it. Such a regulation, as a technical by-law enacted by a majority of the stockholders, might be void or voidable; while as a contract entered into by all the stockholders, it might be valid. A void by-law may become a valid contract.

The defendant being an original stockholder, and having accepted her stock certificate without objection, which she still holds, is estopped to say that she did not agree to the terms of the contract evidenced by the certificate. The certificate in terms referred her to the existing by-laws for information as to her duties as a stockholder. In those regulations it was provided that " every certificate of stock shall refer on its face to the provisions of the by-laws and shall be taken by the purchaser subject to all the by-laws." Was she willing to become a stockholder under the conditions therein contained? In the absence of fraud, undue influence, or misrepresentation practiced upon her, her acceptance of the certificate as a gift from her father, without a suggestion of dissent from the conditions imposed, which were reasonable and perhaps necessary for the success of the enterprise, furnishes conclusive proof of her contractual engagement which she is not at liberty to disregard. She cannot insist that she is an innocent stockholder, opposing the enforcement of an unjust and illegal by-law passed after her acquisition of the stock, against her dissent or without her knowledge. Such a by-law is void because it violates the dissenting stockholder's contract with the corporation (*Dow* v. *Railroad*, 67 N. H. 1) ; but if it has the opposite effect, and furnishes the evidence of the contract to which he assented, either expressly or by implication, when he received his certificate, as in this case, its invalidity as a by-law as against some other party cannot be successfully urged as a reason for relieving him from the legitimate consequences of his contract.

The defendant's contention, that the contract under which she acquired the stock is rendered void by the rule against perpetuities, and that it cannot be enforced for that reason, is unsound. Her agreement was, in part, that in case she desired to dispose of her stock she would first offer it to the association for a specified sum ; if the association declined to take it, she would offer it to the stockholders for the same sum ; and if they declined it, she was free to sell it to anybody and at any price she saw fit. Upon this agreement she obtained the stock which she now holds, claiming, in effect, that the contract was sufficient to transfer to her the title, but that it was ineffectual to restrict her right of disposing of it. But whatever effect, if any, the restricted right of alienation of the stock might be held to have upon the validity of the contract (*Hunt* v. *Wright*, 47 N. H. 396), the defendant is not in a position to interpose that defence. There is in fact no contest in regard to her ownership of the stock. She claims to be the owner, and the plaintiff does not dispute her claim. She does not seek to rescind the contract and surrender the stock for which she paid nothing ; nor is the plaintiff seeking to enforce a forfeiture

of her title.   Under these circumstances common justice forbids
that she should be permitted to retain the stock and enjoy the
benefits incident to its ownership without incurring the burdens
she agreed to assume by such ownership.   If the contract is valid
so far as it conferred benefits upon her, it is equally valid so far as
it imposed obligations upon her.   *M. & L. Railroad* v. *Railroad*,
66 N. H. 100, 127 ; *McDonald* v. *Insurance Co.*, 68 N. H. 5, 6 ;
*Scholey* v. *Rew*, 23 Wall. 331 ; *Branch* v. *Jesup*, 106 U. S. 468,
481 ; *Woburn* v. *Henshaw*, 101 Mass. 193, 200 ; *Jacobs* v. *Miller*,
50 Mich. 119, 126.

As the manner of disposing of the stock is explicitly pointed
out in the by-laws and agreed to by the defendant, and as it is not
contrary to public policy (Cook Stock & Stockh., *s.* 332), no other
method can be adopted, as between the parties, for a sale of it in
the enforcement of the plaintiff's lien thereon.   If the defendant
declines to discharge the lien, it is evident the stock must be sold
in order to render the lien effective (*Brent* v. *Bank*, 10 Pet. 596)
and to enforce the contract.   Neither the plaintiff nor the defend-
ant can insist that it should be sold at auction or in some other
way to third parties, until the association and the stockholders
individually have declined to pay $20,000 for it.   As the associ-
ation is willing to pay that sum, the defendant cannot sell it to
other parties, for she has agreed to give the association the first
option to purchase it; and as it is the duty of the court to enforce
the contract between the parties, the following decree will be
entered : If the defendant shall not pay to the plaintiff the amount
of the several assessments with interest thereon, within such time
as the superior court shall find to be reasonable, the defendant is
ordered to transfer her certificate of stock in the Blue Mountain
Forest Association to the association, upon its tender to her of the
sum of $20,000, in accordance with the terms of the by-laws.

*Case discharged.*

PARSONS, J., did not sit : the others concurred.