## Doss *v*. Yingling et al.

[No. 14,064.   Filed September 26, 1930.   Rehearing denied December 17, 1930.   Transfer denied January 12, 1933.]

*Chester Y. Kelly* and *Piety & Piety,* for appellant.

*Paul R. Shaffer* and *Walker & Hilleary,* for appellee.

NEAL, C. J.—This suit was instituted by appellant, plaintiff below, against the appellees, to enjoin appellee, William H. Yingling, from negotiating, assigning or transferring any of the common capital stock of Terre Haute Heavy Hardware Company, an Indiana corporation, owned by him, except in accordance with the terms of a certain agreement among all of the stockholders of the above-named corporation and of a. by-law of the corporation. The complaint also sought to enjoin appellee Merrifield, the treasurer of the corporation, from transferring any of the capital stock of the corporation except in accordance with the agreement and by-law mentioned above.

One of the assigned errors challenges the action of the trial judge in sustaining a demurrer to the amended complaint. The amended complaint alleges, in substance, the following material facts, viz.: That in June, 1911, appellees, Yingling and Merrifield, and one Faires Colwell entered into an agreement to form and did form a corporation, under and by virtue of the laws of the State of Indiana, known as Terre Haute Heavy Hardware Company; that part of the consideration of the purchase of stock in the corporation by each incorporator was the promise of the others that they would not transfer any stock of the corporation to any person until after the same had been offered for sale to the other stockholders at the value of the same as shown by the books of the company at the time of the proposed sale. that as evidence of such agreement the stockholders at the first stockholders' meeting adopted the following by-law, to wit: "If any stockholder desires to sell his stock in such company, the remaining stockholders of such company shall have the first right to purchase the same in the proportions of their present holdings in such company, and the price to be paid for such seller's stock shall be the value of the same as shown by the books of the company at the time of the proposed sale. Such retiring or selling stockholder shall give to the other stockholders notice in writing of his intention to sell his stock, and such remaining stockholders shall have ten (10) days from the receipt of said notice within which to purchase such stock at its book value; but if they, or either of them, do not exercise the right to purchase, then such selling stockholder is at liberty to sell such stock to third persons. If any stockholder does not desire to avail himself of the privilege to purchase such stock as herein provided, then the other stockholders may exercise such privilege in the proportions of their present holdings." That in pursuance of such

agreement and by-law, the appellees, as officers of the corporation, issued within a year from the day of incorporation, 300 shares of the common capital stock to Yingling, 100 shares to appellee Merrifield, and 20 shares to Colwell; that Colwell desired, in 1913, to dispose of his stock and, in accordance with the agreement and by-law heretofore mentioned, gave notice of such intention to appellees Yingling and Merrifield, who caused the stock to be assigned and delivered to them as officers of the corporation; that at or about the same time that Colwell so surrendered his stock, the appellees solicited the appellant to become a stockholder with them in the corporation and appellant was informed by appellees of the above-mentioned agreement and by-law and promised appellant, and required appellant to promise them, that in the event stock should be issued to appellant, the agreement and by-law should remain in force and that no one of the stockholders would transfer any stock except in accordance with the agreement and the provisions of the by-law above referred to; that appellant did thereupon purchase 40 shares of the common capital stock and that part of the consideration for the transfer to him of stock was the agreement of each owner of stock that no stockholder would transfer any stock except in compliance with the agreement and by-law; that thereafter shares of the common capital stock were sold and transferred on the books of the corporation to appellees, Merrifield, Gharst, and Fehring, and in each instance such sale and transfer was made pursuant to the agreement and by-law as to the sale of stock and Gharst and Fehring promised and agreed as part of the consideration of the sale of stock to each of them that the provisions of the above-mentioned by-law would be faithfully observed by them; that at the time of the sale of stock to Fehring, there being no treasury stock,

Yingling surrendered his original certificate No. 5 calling for 100 shares and took a re-issue of 90 shares, and permitted sale of his 10 shares to Fehring; that the sale and transfer to Fehring was consummated on January 2, 1924; that on January 2, 1924, appellee William H. Yingling was president and appellee Harry E. Merrifield was treasurer, which officers issued the stock certificates of the corporation; and appellees, as such officers, and contrary to their agreement and the by-law of said corporation and contrary to the laws of the State of Indiana, neglected to copy the provisions of said by-law upon the certificate of stock so re-issued to appellee Yingling; that the purpose of the agreement and said by-law was to prevent the acquisition of stock in said corporation by anyone whose association might be objectionable to the other stockholders, or who might reveal the business of said corporation to a competitor, or who might have no knowledge of and be of no assistance to the business of the corporation; that there are now 500 shares of the common capital stock of said corporation, of which appellant owns 40 shares, Yingling 290 shares, Merrifield 150, Ivan C. Gharst 10 shares, and Lynn C. Fehring 10 shares; that appellee William H. Yingling is threatening to and, unless restrained and enjoined by the court, will transfer and assign for value some of his common stock in said corporation to some innocent purchaser not at present a stockholder in the corporation who has no notice of the above-mentioned agreement and by-law in regard to the sale of such stock, in order to defeat appellant's rights in said corporation.

Appellant says that appellee Harry E. Merrifield is the treasurer of the corporation and as such makes the transfer and, with the president, signs and issues new certificates of stock in the corporation, and he is threatening to, and unless enjoined by this court, will transfer

assignments of stock of the corporation and issue new stock in the corporation, all contrary to the above alleged agreement and by-law; that by reason of the agreement and by-law each stockholder is a director of and has an equal voice in the management of the corporation, but if appellee Yingling be permitted to transfer shares of stock in said corporation, appellant will lose his right to share in the management of the business of the corporation, for the loss of which he cannot recover damages at law, that an emergency exists by reason of which a temporary restraining order and injunction without notice should issue to the appellees to prevent the threatened unlawful acts; that a temporary restraining order and injunction be issued against said appellee restraining and enjoining appellee William H. Yingling from negotiating, assigning, or transferring any of the capital stock of Terre Haute Heavy Hardware Company except in accordance and compliance with said agreement and the provisions of said by-law, and restraining and enjoining appellee Harry E. Merrifield from making any transfer of stock on the books of the corporation except in accordance and compliance with the agreement and by-law, and that upon final hearing the restraining order and injunction be made permanent, and for all other proper relief.

The appellee Yingling, in support of the ruling of the trial court, impliedly admits that the restrictions placed on the sale of the common capital stock of the Terre Haute Heavy Hardware Company as alleged in the amended complaint is a reasonable one and therefore valid and binding provided that such by-law had been printed on the several certificates of stock pursuant to §4979 Burns 1926.

It is apparent that the courts of appeal are not uniform in sustaining the validity of a by-law containing the provisions such as we have before us. The reasons

given for holding a by-law invalid which in any way regulates the alienation of corporate stock, may be summarized as follows: Stock in a corporation is personal property. When held by an individual it is his own private property which he may sell or dispose of as he sees proper and over which neither the corporation nor the corporation officers have any control. Shares of stock may be seized and sold on execution, bequeathed by will and distributed by administrators. Regulation of the alienation of corporate stock is a restraint on the alienation of property and is against public policy. See *Farmers Mercantile & Supply Co.* v. *Laun* (1911), 146 Wis. 252, 131 N. W. 366; *Victor G. Bloede Co.* v. *Bloede* (1896), 84 Md. 129, 34 Atl. 1127, 33 L. R. A. 107, 57 Am. St. 373; *Steele* v. *Farmers' & Merchants' Mut. Telephone Assn.* (1915), 95 Kans. 589, 148 Pac. 661.

The weight of authority is to the effect that a corporate by-law which requires the owner of the stock to give the other stockholders of the corporation, or the corporators, in case the corporation is empowered to purchase its own stock, an option to purchase the same at an agreed price or the then-existing book value before offering the stock for sale to an outsider, is a valid and reasonable restriction and binding upon the stockholders. *Sterling Loan & Investment Co.* v. *Litel* (1924), 75 Colo. 34, 223 Pac. 753; *People* v. *Galskis* (1924), 233 Ill. App. 414; *Fopian* v. *Italian Catholic Cemetery Assn.* (1927), 260 Mass. 99, 156 N. E. 708, 709; *Feldstein's Estate* (1916), 25 Pa. Dist. R. 602; *Nicholson* v. *Franklin Brewery Co.* (1910), 82 Ohio St. 94, 91 N. E. 991, 137 Am. St. Rep. 764, 19 Ann. Cas. 699.

In several states the courts of last resort have refused to recognize as valid a by-law of a corporation such as we have before us, but have enforced an agreement, which agreement is evidenced by the by-law, entered

into and acted upon by the stockholders, which gives to the other stockholders an option to purchase the stock before sale to an outsider. We quote from *Searles* v. *Bar Harbor Banking Co.* (1929), 128 Me. 34, 145 Atl. 391, 65 A. L. R. 1154, as follows: "However, the weight of authority and we think the tendency of the more recent decisions as the reasons for maintaining the integrity of the stockholding body have become more manifest, is to sustain such restrictions if reasonable and the stock has been accepted following the adoption of the restriction and with knowledge of its provisions, whether valid as a by-law or not, on the ground that it constitutes a valid agreement between the stockholders and the corporation, especially if it goes no farther than to give an option on the stock for a limited period." In support of the above statement the Supreme Court of Maine cites the following cases: *New England Trust Co.* v. *Abbott* (1894), 162 Mass. 148, 38 N. E. 432, 27 L. R. A. 271; *Weiland* v. *Hogan* (1913), 177 Mich. 626, 143 N. W. 599; *Model Clothing House* v. *Dickinson* (1920), 146 Minn. 367, 178 N. W. 957; *Blue Mountain Forest Assn.* v. *Borrowe* (1901), 71 N. H. 69, 51 Atl. 670.

The complaint in this instance is not predicated solely upon the validity of the by-law but also upon an agreement entered into between the incorporators at the time the corporation was organized that when one incorporator desired to sell his stock he must first offer the stock for sale to the remaining stockholders at the then existing book value for a period of 10 days before offering it for sale to an outsider, which agreement was thereafter evidenced by the by-law heretofore set forth, observed through successive years by each incorporator upon the sale of the common stock of the corporation.

So, whether we hold the restriction on the alienation

on the common stock as valid under the provisions of the by-law or sustain the restrictions by virtue of an agreement entered into between the original incorporators, and evidenced by the by-law, which agreement and by-law were thereafter acted upon and observed by the stockholders of this corporation, the result is the same. The Supreme Court of New Jersey, in *Baumohl* v. *Goldstein* (1924), 95 N. J. Eq. 597, 124 Atl. 118, 120, well said: "As among the original incorporators there seems to be no reason in principal why they should not be permitted to retain the control of the corporation in which they have embarked their fortunes among themselves, or such of them as stand by the vessel, where no question of a bona fide purchaser without notice is involved. . . . where the intent of the parties is the thing sought to be enforced, every effort should be made to hold men to agreements into which they have voluntarily entered, where the same are not obnoxious to any law or policy, and upon the strength of which others have changed their position or circumstances, or parted with a valuable consideration. It is their business and their money involved. It is by their efforts that success is attained, if attained at all. Surely the public cannot be aggrieved, and individuals acting in accordance with equitable doctrines cannot be injured, because if they have no knowledge of notice of a fact they are not injured by it."

The regulation imposed on the alienation of the common capital stock in this corporation was a reasonable one: It does not prevent the alienation of the stock; no permanent impediment to the transfer is contemplated by the terms of the agreement and by-law. The only purpose was to give to those owning stock the right and privilege to keep the control of the corporation in the hands of those who are its friends and friendly to those entrusted with the administration

of its prudential affairs. The restrictions in this instance are not against public policy.

Section 4979 Burns 1926 reads as follows: "There shall be no lien in favor of a corporation upon shares represented by a certificate issued by such corporation and there shall be no restriction upon the transfer of shares so represented by virtue of any by-laws of such corporation, or otherwise, unless the right of the corporation to such lien or the restriction is stated upon the certificate."

The appellee says that the amended complaint alleges that his certificate No. 9 was issued on January 2, 1924, which was after the above statute took effect; that no arrangement or agreement to restrict the transfer of stock would prevent the transfer thereof unless such contract or arrangement was printed upon the certificate of stock when the stock was issued subsequent to the taking effect of the aforesaid act. In support of his proposition, he relies upon *Hoosier Chemical Works* v. *Brown* (1929), 200 Ind. 535, 165 N. E. 323. We cannot agree with the appellee in such a sweeping statement of the law, neither are we of the opinion that the case last referred to provides a foundation upon which appellee's proposition may rest under the facts alleged in the amended complaint.

The above act of our legislature in relation to the transfer of shares of stock was "designed for the protection of innocent purchasers of stock, in the open market or otherwise and not at all as a shield by one with knowledge of a condition to unconsciously protect himself from the consequences thereof." *Baumohl* v. *Goldstein, supra.*

Appellee Yingling was an original stockholder. He was an officer of the corporation—the president. He knew the terms of the agreement and the provisions of

the by-law which regulated the alienation of the stock of this company. He, through successive years, acted in accordance with the terms of the agreement and the provisions of the by-law in the sale and transfer of the capital stock of the corporation. He knew, or should have known, the law which provides that restrictions of the sale of stock shall be printed on the certificate of stock and, as president of the corporation, it was his duty to see that the by-laws of the corporation were made effectual and in a court of equity it ill becomes him to invoke the protection of the statute above referred to.

The appellant in this case did not have an adequate remedy at law. The personnel of the stockholders in this closed corporation was of far more importance than any monetary loss appellant might have sustained by his inability to purchase additional stock at the existing book value. We quote from *Moses* v. *Soule* (1909), 63 Misc. Rep. 203, 118 N. Y. Supp. 410, 414 (affirmed in 1909, 136 App. Div. 904, 120 N. Y. Supp. 1136), as follows: "In the management of corporations few things are more apparent than the desire to keep the control of the same in the hands of people who are congenial to the enterprise and to those who manage its affairs. A quarreling directorate is a misfortune to the stockholders of any corporation. When such situations occur, as they often do, there is no objection to the purchase by the corporation of the shares of the disgruntled stockholders and the resale of the stock to those more in harmony with the enterprise. In the organization of corporations it is frequently provided in the articles or by-laws that a stockholder shall not sell his stock without first giving a stated period within which the corporation and the other stockholders may have opportunity to purchase. I find nothing in all

this against public policy. On the contrary, it has to do solely with common sense and practical business."

Appellee says that it was incumbent on the appellant to allege and prove that he or the other stockholders were ready and willing to purchase the two hundred and ninety shares of stock Yingling was threatening to sell. The argument would be applicable if this proceeding was for specific performance of a contract. However, this is a suit to enjoin appellant from transferring any of his stock except in accordance with his solemn agreement and the provisions of the above-named by-law. Lawrence on Equity Jurisprudence, Vol. I, Section 290.

Appellant has attempted to assign other errors than the sustaining of the demurrer to the amended complaint but we are of the opinion that the same cannot be considered.

Appellee Yingling has filed a verified motion to dismiss the appeal alleging therein that the act or acts sought to be enjoined have already been committed by the party against whom the injunction is sought prior to the time of perfecting this appeal from a judgment in this case denying injunctive relief. However, we find upon examination of the petition that appellee Yingling has sold and transferred only sixteen shares of the common capital stock and has remaining in his own name two hundred and seventy-four shares. The amended complaint seeks to restrain William H. Yingling from transferring any of his stock to an innocent purchaser. We hold the issues presented are not moot and therefore the motion to dismiss the appeal is overruled.

We hold that the amended complaint is sufficient as against demurrer. The judgment is reversed with instruction to overrule appellee's demurrer to the amended complaint.