LINDEN N. ELSON, APPELLANT, V. CHARLES SCHMIDT ET AL., APPELLEES.

1 N. W. (2d) 314

FILED DECEMBER 5, 1941. No. 31056.

*Fred J. Schroeder, Frank B. Morrison* and *Peterson & Devoe,* for appellant.

*Cordeal, Colfer & Russell* and *Butler, James & McCarl, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

MESSMORE, J.

Plaintiff, a stockholder of the Curtis & Fox Creek Telephone Company, brought this action in equity, to set aside the sale of certain stock owned by Curtis & Fox Creek Telephone Company in the Curtis Telephone Company. From an adverse decision of the trial court, plaintiff appeals.

A statement in detail of some of the facts is necessary to an understanding of this case. For convenience, the Curtis & Southwestern Telephone Company will be referred to in this opinion as the Southwestern Company; the Curtis & Fox Creek Telephone Company as the Fox Creek Company; the North Star, Sheridan & Curtis Telephone Company as the North Star Company, and the Curtis Telephone Company as the Curtis Company. The record discloses:

In November, 1908, a rural telephone company was incorporated under the laws of this state as the Curtis & Southwestern Telephone Company. In April, 1910, the North Star, Sheridan & Curtis Telephone Company was incorporated. In May, 1910, the Curtis & Fox Creek Telephone Company was incorporated. In addition to the foregoing companies, there was the Farmers Telephone Company of Maywood. These four independent corporations operated telephone lines in and out of the town of Curtis, Nebraska. In March, 1911, the four companies, in order to eliminate the many problems which arose incident to the independent operation by them, incorporated a fifth

corporation which took over the central office equipment of the four companies and all of the lines in the town of Curtis, the four companies retaining the rural lines. Each of the four companies received an equal share of stock in the Curtis Telephone Company, the central company. The control of the Curtis Company was vested in a board of directors, made up of one representative of each of the four original companies. Some time later, and before 1916, the Fox Creek Company took over the Farmers Telephone Company of Maywood, including said company's stock in the Curtis Company, thereby vesting the Fox Creek Company with one-half of the stock of the Curtis Company. As a consequence, the Fox Creek Company elected two representatives to the board of directors of the Curtis Company.

At the time of the incorporation of the Curtis Company, a constitution and by-laws were adopted. Contained in the constitution appears article IV as follows: "Shares are transferable on the books of the Company upon presentation of the Certificate properly indorsed, provided all indebtedness of the owner to this Company has been paid, and provided further, that one of the four Companies is the purchaser or each have had opportunity to purchase at par or less."

The ownership of the stock of the foregoing companies in the Curtis Company appears as follows: The Fox Creek Company 22 shares of the capital stock, and the Southwestern Company and the North Star Company each 11 shares. The charters of the North Star Company and of the Fox Creek Company expired in 1935. In 1936 the charter of the Curtis Company expired. Regardless, the four companies continued business as usual until March 1, 1938, when appellant, who had then acquired a majority of the outstanding stock of the Fox Creek Company, demanded that the company be liquidated by the members of the board of directors serving at the time the charter expired in their capacity as trustees, as by law provided. On March 3, 1938, a meeting of the trustees was held, and on the same day the trustees entered into an agree-

ment with the Southwestern Company, by the terms of which they sold the 22 shares of stock of the par value of $50 each to the Southwestern Company for the sum of $1,100. March 8, 1938, an assignment of the stock was executed and payment received for the same. It is this sale that the appellant seeks to set aside. He informed the trustees that he would pay the sum of $4,225 for the 22 shares of stock. The trustees based their action in selling the stock at par on the provisions of article IV of the constitution above quoted, and the question presented is the validity of that section, which gives rise to appellant's assignment of error: That the provisions of article IV are invalid as an unreasonable restraint upon the transfer of property and against public policy. In this respect the trial court found as follows:

"The transaction was consummated in the carrying out of the agreement made and set out in article IV of the constitution of the Curtis Telephone Company; the telephone companies, parties to the transaction complained of, being both incorporators and parties to the agreement contained in the section of the constitution of the Curtis Telephone Company heretofore set forth, that provision amounted to a contract between the parties thereto." In determining the validity of article IV, a brief history of the aims and desires of the incorporators at the time of incorporating the respective companies and in incorporating the Curtis Telephone Company is of value.

The four companies were all rural lines; all four desired one exchange. It is apparent they wanted to keep control from passing to outsiders. To avoid this, all four companies joined in the adoption of the constitution which, when read and analyzed, in addition to article IV, discloses the intention of the four companies to vest the management and control of the Curtis Company in the rural companies which form it.

Article III of the constitution of the Curtis Company provided that the capital stock shall be $5,000, of a par value of $50 a share, "to be issued for cash in hand or

property at a fair valuation, to each of the four contracting Companies in equal amounts, share and share alike." Article VI of the constitution vested the management of the company in the board of directors of the four companies, each board having one vote, and each company being entitled to select one officer of the central company. Article VII provided that the expenses of the company should be pro-rated between the four companies.

It will be noted that article IV of the constitution gave the right to the other stockholders of the corporation to purchase the stock at par before the stock could be sold and transferred to an outsider. Article IV was adopted prior to the incorporation by the parties who subsequently became incorporators of the Curtis Company. It is obvious that the parties agreed among themselves how the corporation should be organized and how its stock should be sold and transferred. To that end, they might reasonably foresee where the stock and management of the corporation would rest.

Appellees' answer specifically pleads that article IV, heretofore quoted, constituted a contract between the four telephone companies which participated in the adoption of the article. The trial court declared article IV to constitute a contract. There is a direct conflict in the authorities, and the courts are not uniform in sustaining the validity of a by-law containing provisions such as appear in article IV. The courts which have determined such a by-law to be invalid base their decisions upon the premise that such an article regulates the alienation of corporate stock; that corporate stock is personal property, and, when held by an individual, he may sell or dispose of it as he deems proper; that shares of corporate stock may be seized and sold on execution, bequeathed by will and distributed by administrators; therefore, regulation of alienation of corporate stock is a restraint on the alienation of property and against public policy.

After a careful reading of the authorities, we find that the weight thereof is to the effect that a corporate by-law,

which requires the owner of stock to give to the other stockholders of the corporation, in case the corporation is required to purchase its own stock, an option to purchase the same at an agreed price, or at the then existing book value thereof, before offering the stock for sale to an outsider, is a reasonable restriction and binding upon the stockholders. Cases holding to such effect are *Sterling Loan & Investment Co. v. Litel*, 75 Colo. 34, 223 Pac. 753; *People v. Galskis*, 233 Ill. App. 414; *Fopiano v. Italian Catholic Cemetery Ass'n*, 260 Mass. 99, 156 N. E. 708; *Feldstein's Estate*, 25 Pa. Dist. Rep. 602; *Nicholson v. Franklin Brewing Co.*, 82 Ohio St. 94, 91 N. E. 991, 137 Am. St. Rep. 764, 19 Ann. Cas. 699.

In the annotation, 65 A. L. R. 1170, we find the following language: "A number of authorities adhere to the doctrine that, regardless of the validity of a by-law giving the corporation or the other stockholders an option to purchase the stock of any stockholder desiring to dispose of the same, as a corporate restriction, such a by-law gives rise to a binding contract as between the corporation and the stockholders and as between the latter *inter sese*." In furtherance of the foregoing authority, the tendency of more recent decisions is to sustain such restrictions as contained in article IV, *supra*, if reasonable, and if the stock has been accepted following the adoption of the restriction, with knowledge of its provisions, whether valid as a by-law or not, on the ground that it constitutes a valid agreement between the stockholder and the corporation. *Searles v. Bar Harbor Banking & Trust Co.*, 128 Me. 34, 145 Atl. 391, 65 A. L. R. 1154; *New England Trust Co. v. Abbott*, 162 Mass. 148, 38 N. E. 432; *Weiland v. Hogan*, 177 Mich. 626, 143 N. W. 599; *Model Clothing House v. Dickinson*, 146 Minn. 367, 178 N. W. 957; *Blue Mountain Forest Ass'n v. Borrowe*, 71 N. H. 69, 51 Atl. 670. So, whether we hold the restriction on the alienation of the stock is valid under the provisions of the by-law, or sustain the restriction by virtue of an agreement entered into between the original incorporators, as evidenced by the by-law, which agreement

and by-law were thereafter acted upon and observed by the stockholders of the corporation, the result is the same. See *Baumohl v. Goldstein,* 95 N. J. Eq. 597, 124 Atl. 118. The reasoning of the New Jersey court appears on page 602 of the opinion as follows:

"There seems to be no reason in principle why they (the stockholders of a corporation) should not be permitted to retain the control of the corporation in which they have embarked their fortunes among themselves, or such of them as stand by the vessel, where no question of a *bona fide* purchaser without notice is involved. In this court, where the intent of the parties is the thing sought to be enforced, every effort should be made to hold men to agreements into which they have voluntarily entered, where the same are not obnoxious to any law or policy, and upon the strength of which others have changed their position or circumstances, or parted with a valuable consideration. It is *their* business and *their* money which is involved. It is by their efforts that success is attained, if attained at all. Surely, the public cannot be aggrieved, and individuals acting in accordance with equitable doctrines cannot be injured, because if they have no knowledge or notice of a fact they are not injured by it."

A case containing the substance of the foregoing language and analyses of several cases cited by appellant is *Doss v. Yingling,* 95 Ind. App. 494, 172 N. E. 801. Cases supporting the rule pronounced in that case are *Weiland v. Hogan, supra; New England Trust Co. v. Abbott, supra; Barrett v. King,* 181 Mass. 476, 63 N. E. 934; *Nicholson v. Franklin Brewing Co., supra; Mason v. Mallard Telephone Co.,* 213 Ia. 1076, 240 N. W. 671.

The case of *Miller v. Farmers Milling & Elevator Co.,* 78 Neb. 441, 110 N. W. 995, upon which appellant relies, may be distinguished from the case at bar. In that case the by-laws prohibited Miller from selling the stock to any one without the consent of the directors, while in the case at bar the stock would first be offered at par to the stockholders; then, if not purchased by them, it could be sold

to persons outside the corporation. Thus, there was no absolute prohibition of the sale of the stock. The consent of the directors was not required.

In the instant case, the Fox Creek Company was one of the original stockholders, responsible for article IV, that gave its consent to the existence of the article and the provisions thereof, while in *Miller v. Farmers Milling & Elevator Co., supra,* Miller was not an original stockholder. We believe the foregoing sufficient to disclose the inapplicability of the *Miller* case to the case at bar.

We conclude that article IV of the constitution of the Curtis Company is valid as a contract between the original parties and binding upon the Fox Creek Company, one of the original incorporators. The trustees of the latter company, in making this sale, carried out the contractual obligation contained in the original charter under which the rural telephone companies had operated and under which they had built up whatever value there was to the stock. The parties to the sale have not acted fraudulently; they did just what the provisions of the article stated they should do. There is no merit in the contention of the appellant as to fraud, and his further contention that the amount received for the stock is unconscionable, as compared with the offer made by him is not an issue, when article IV is held to be a valid contract.

Appellant contends: In the event article IV be declared valid, either as a contract between the stockholders or as a by-law, such article is no longer in effect, for the reason that it had expired April 1, 1936, when the charter of the Curtis Company expired. The affairs of the Fox Creek Company were also in the hands of the trustees, its charter having expired; therefore, upon the expiration of the corporate charter, the last board of directors become the trustees for dissolution, to distribute the assets of the corporation among its stockholders. Comp. St. 1929, sec. 24-107. This raises the question as to the validity of the charter amendment of the Curtis Company so as to extend the life of such corporation.

On July 9, 1937, the central board of the Curtis Company, composed of the duly-appointed representatives from all three of the rural companies that owned it, met at Curtis and voted to extend the corporate life of the Curtis Company for 25 years and to readopt the constitution of that company. At that time the amended articles of incorporation of the Curtis Company were signed by the three presidents of the three companies and were filed in the office of the county clerk of Frontier county July 10, 1938, and also in the office of the secretary of state. Thereafter, the Curtis Company continued to function as a corporation, furnishing telephone service, being managed by the central board composed of representatives from each of the three companies. After the filing of the amended articles of incorporation, the state of Nebraska accepted payment of corporation taxes, issued corporate permits for the years ending June 30, 1937, and June 30, 1938. What was really done was to preserve the business of the corporation and the relation of the stockholders to it.

This court in *Parks v. James J. Parks Co.*, 128 Neb. 600, 259 N. W. 509, said: "It is essential to the existence of a *de facto* corporation that there be (1) the existence of a charter or some law under which a corporation with the powers assumed might lawfully be created; (2) a *bona fide* attempt to organize a corporation under such law; (3) a colorable compliance with the requirements of such law; and (4) an actual user of corporate power."

The case of *Elson v. Schmidt*, 136 Neb. 778, 287 N. W. 196, involved the identical transaction as in the case at bar, the distinction being in the form of the relief asked,—in the cited case an injunction to restrain the sale, in the instant case to set aside the same sale. Certain facts, very similar to those in the instant case, were set out therein, where an attempt was made by the Southwestern Company to reincorporate. The question in the case cited above arose mainly as to satisfying general requirements of the laws relative to stock subscription. The court, in an analysis of all the facts, said: "While technically the new corpora-

tion was a separate entity from the old, the effect of what was done was simply to preserve the business of the old Curtis & Southwestern Telephone Company and the relationship of the stockholders to it." The court decided that the attempt to incorporate contained all of the essential elements that constituted a *de facto* corporation, within the meaning of the decision in *Parks v. James J. Parks Co., supra.*

Again referring to the *Parks* case, the company adopted amendatory articles of incorporation, included therein by reference the articles of the old corporation that had expired because of its own limitations as to time provided in its articles, subsequently filed amended articles with the county clerk of its residence and with the secretary of state, paid its corporation tax, and exercised the general powers of a corporation toward the business, for the carrying out of which it was purported to have been organized, said business being a lawful one, within the provisions of section 24-201, Comp. St. 1929. The court held that such corporation constituted a *de facto* corporation.

We conclude that the facts in the instant case with reference to extending the life of the Curtis Company as a corporation meet all of the requirements that would constitute a *de facto* corporation, within the meaning of the holdings in *Parks v. James J. Parks Co., supra,* and *Elson v. Schmidt, supra.* Therefore, the appellant's contention as to article IV being invalid and ineffective, for the reason that it had expired on April 1, 1936, must fall. Other assignments of error need not be determined.

The judgment of the trial court is

AFFIRMED.