**Paul SWANSON, Appellant,**

v.

**Robert A. SHOCKLEY, Appellee.**

No. 83–1492.

Supreme Court of Iowa.

March 20, 1985.

Rehearing Denied April 15, 1985.

Joe Cosgrove of Yaneff & Cosgrove, Sioux City, for appellant.

James R. Villone and Daniel T. Cutler of Klass, Whicher & Mishne, Sioux City, for appellee.

Considered by HARRIS, P.J., and McGIVERIN, SCHULTZ, CARTER, and WOLLE, JJ.

CARTER, Justice.

Both plaintiff and defendant appeal from district court judgment denying damages to plaintiff in an action alleging sale of corporate stock by the defendant in violation of plaintiff's right of first refusal. The defendant, formerly the majority stockholder in a closely-held corporation, sold his stock to an outsider. The plaintiff, minority stockholder, sued for damages allegedly resulting from this sale.

The plaintiff Paul Swanson has owned twenty-five shares of a corporation now known as North Central Adjustment Co., Inc. since 1959 and continued to own such shares at the time of trial. Defendant Robert Shockley had owned seventy-five shares of this corporation prior to December of 1977 at which time he sold them to John B.

Davis, who was not and never had been a shareholder in the corporation. Davis agreed to pay $90,000 for defendant's shares in installments payable over a ten-year period. At the time of that sale, the shares of the plaintiff and the defendant represented all of the stock of the corporation except for two shares issued to corporate directors.

Subsequent to the sale to Davis, plaintiff commenced the present action, alleging that the sale was in violation of his vested contractual rights under a bylaw of the corporation restricting sales of the corporation's stock. The bylaw in question permitted sale of the stock of the corporation to outsiders only after the corporation had been given a right of first refusal to buy the stock at a formula price and, failing purchase by the corporation, the other stockholders had been given a right of refusal at the same formula price. This bylaw had been in effect at the time plaintiff acquired his stock in the corporation and for some eighteen years thereafter. It was repealed eight months prior to the challenged transaction in accordance with the procedure established in the bylaws for amendments. That repeal was by the affirmative vote of all stockholders of the corporation except plaintiff, who abstained from voting.

The formula price for the defendant's seventy-five shares at the time of their sale to Davis was $7500. Plaintiff contends that he was ready, willing and able to purchase the shares at that price had they been tendered to him. He asserts that he has sustained damages measured by the difference between the value of the stock at the time it was sold to Davis and the formula price under which plaintiff would have been entitled to buy it.

Defendant defended the action, in part, on the ground that the repeal of the bylaw was valid and removed any obligation on his part to tender the shares to the corporation or plaintiff. The district court rejected defendant's contention that the repeal of the bylaw restricting sale of stock to outsiders could diminish plaintiff's rights with respect thereto. Relying on *Berger v. Amana Society*, 250 Iowa 1060, 95 N.W.2d 909 (1959), the district court held that the bylaw in question had created a vested contractual right in the plaintiff which could not be defeated in the absence of his affirmative consent to the challenged transaction. Nevertheless, the district court denied damages to the plaintiff after finding that plaintiff had failed to establish with any reasonable likelihood that the stock would have been available for him to purchase had it first been tendered to the corporation as was required under the bylaw.

On plaintiff's appeal, it is urged that his contractual rights exist separate and apart from the bylaw which created the rights of first refusal. He contends that the action of the corporation in repealing that bylaw was a waiver of any contractual rights it might have had with respect to the challenged transaction, therefore leaving plaintiff as the holder of the only remaining right of first refusal. Defendant treats this issue as one of proximate cause and urges that the transaction would never have occurred had the defendant believed that there were any outstanding rights of refusal at a formula price many thousands of dollars below the market value of the stock.

On his cross-appeal, the defendant asserts that the district court erred in recognizing any contractual right of refusal on plaintiff's part subsequent to the repeal of the bylaw upon which such right is predicated. Because we find that consideration of the cross-appeal is dispositive of the case, we do not reach the issues presented on plaintiff's appeal.

In *Berger*, 250 Iowa at 1070, 95 N.W.2d at 915, we held that a provision in the articles of incorporation of the Amana Society that class "A" stockholders were entitled to surrender their stock for redemption at an agreed value conferred vested contractual rights upon those stockholders which could not be defeated by amending the articles. The trial court relied on this decision in concluding that in the present

case plaintiff held a contractual right of first refusal on the sale of defendant's stock which could not be defeated by an amendment to the bylaws of the corporation.

Defendant urges that the *Berger* decision is not in point and that plaintiff has otherwise failed to establish that he was possessed of a contractual right to purchase defendant's shares at the time they were sold to a third party. Defendant's first attempt to distinguish *Berger* is on the basis that the provisions giving rise to the contractual rights in that case were in the articles of incorporation rather than in the bylaws. We do not believe that the contractual theory recognized in *Berger* is only available where the rights upon which reliance has been placed are conferred by the articles of incorporation. Several courts have recognized that contractual rights may arise from shareholder reliance on corporate bylaws. *Palmer v. Chamberlin,* 191 F.2d 532, 537 (5th Cir.1951) (applying Missouri law); *Oakland Scavenger Co. v. Gandi,* 51 Cal.App.2d 69, 81, 124 P.2d 143, 150 (1942); *Elson v. Schmidt,* 140 Neb. 646, 650, 1 N.W.2d 314, 317 (1941); *Bechtold v. Coleman Realty Co.,* 367 Pa. 208, 213, 79 A.2d 661, 663–64 (1951); Annot. 61 A.L.R.2d 1318, 1326 (1958).

▇▇▇▇ Our decisions in *Norton v. Catholic Order of Foresters,* 138 Iowa 464, 114 N.W. 893 (1908), and *Sieverts v. National Benevolent Association,* 95 Iowa 710, 64 N.W. 671 (1895), appear to recognize that bylaws may have this potential. *See also* 8 W. Fletcher, *Cyclopedia of the Law of Private Corporations* §§ 4177, 4188 (rev. ed. 1982); Cataldo, *Stock Transfer Restrictions and The Closed Corporation,* 37 Va. L.Rev. 229 (1951). The general rule is as stated in *Bechtold,* 367 Pa. at 213, 79 A.2d at 663–64:

> Provisions in corporate by-laws may, generally speaking, be divided into two classes (a) those that are mere regulations governing the conduct of the internal affairs of the corporation. These may be repealed, altered and amended at the will of the majority unless a greater vote is required by the by-laws themselves or by statute. (b) Provisions in the nature of a contract which are evidently designed to vest property rights *inter se* among all stockholders. These cannot be repealed or changed without the consent of the other parties whose rights are affected.

Defendant also seeks to defeat plaintiff's contractual right theory on the basis that subsequent to the adoption of the bylaw upon which plaintiff's claim is predicated, the corporation filed a voluntary election to come under the provisions of the Iowa Business Corporation Act. Iowa Code section 496A.26, which is part of that act, restricts provisions in the bylaws affecting transfer of shares unless authorization therefor is contained in the articles of incorporation. The articles of incorporation of North Central Adjustment Co., Inc. have never provided such authority. This argument of defendant suffers from the fact that it is the plaintiff's theory that he secured his contractual rights at the time he acquired his stock in 1959. If he is correct in this regard, and, if such contractual rights cannot be altered by amendments to the bylaws by the majority shareholders, we do not see how such rights may be defeated by action of the majority shareholders filing a voluntary election to adopt the IBCA.

▇▇▇ This state of affairs forces us to squarely face the issue of whether the subsequently repealed bylaw did confer upon plaintiff the contractual rights which he claims. In making this determination, we are cognizant of the fact that those authorities which recognize vested contractual rights of shareholders based upon corporate articles or bylaws vesting property rights *inter se* are qualified in two respects: (1) in order to be enforceable as a contract, the article or bylaw must be one upon which the party seeking enforcement has relied by change of position or circumstances, or by parting with a valuable consideration, *Palmer,* 191 F.2d at 537; *Elson,* 140 Neb. at 650, 1 N.W.2d at 317; and (2) enforcement of the right must not work an

unreasonable hardship upon the other shareholders. *Carlson v. Ringgold County Mutual Telephone Co.*, 252 Iowa 748, 760, 108 N.W.2d 478, 485 (1961).

■ We believe the obligation which plaintiff is asking us to enforce fails under both of these criteria. Rather than preserving the status quo with respect to the property incidents of plaintiff's stock, as was the situation in *Berger*, plaintiff's proposal seeks to secure a windfall based upon a formula price which, if reasonable at the time of its adoption in 1957, ceased to be such as a result of changes in the corporation's value as a going business which occurred over a period of twenty years and is not reflected in the formula price.

Plaintiff is asking this court to enforce a bylaw which would permit him to purchase defendant's stock for approximately eight percent of its fair market value. If such restriction is enforced, there is no reasonable way for defendant to dispose of his stock. As a policy matter, it is doubtful that such confiscatory restrictions would inure to the benefit of minority shareholders. Majority shareholders faced with this situation would be forced to search for less desirable means of drawing capital from the corporation.

With respect to the criteria of mutual assent, reliance or change of position, the record does not suggest that plaintiff relied in any way upon the repealed bylaw in purchasing his shares. Indeed, it appears that he was not even aware of the existence of this provision at that time. Given these circumstances, we do not believe it is reasonable to apply the restriction to plaintiff's substantial benefit given the resulting injury this would produce upon the defendant. For the reasons stated, we hold that the district court erred in finding that plaintiff enjoyed a vested contractual right of first refusal as a result of the repealed bylaw. Although it acted for reasons other than those we have expressed in this opinion, the district court's judgment correctly denied relief. We affirm that judgment.

AFFIRMED.