## The People of the State of Illinois ex rel. Vincent Rudaitis, Appellee, v. Peter Galskis et al., Appellants.

### Gen. No. 28,868.

1. CORPORATIONS—*right under Uniform Stock Transfer Act to restrict right of transfer.* Section 15 of the Uniform Stock Transfer Act, Cahill's Ill. Stat. ch. 32, ¶ 243, permits restrictions upon the general right to transfer certificates of stock, provided the restriction is reasonable and not contrary to any law or public policy.

2. CORPORATIONS—*validity of limitation in stock certificate on right of transfer.* A provision upon the certificates of stock of a small corporation engaged in the newspaper business, where the association of the stockholders together would partake in a limited degree of the characteristics of a partnership and an unfriendly stockholder might cause serious injury to the enterprise, that "This stock is not transferable unless first offered for sale to the company at its book value as established at the last semi-annual accounting immediately preceding such sale" was reasonable and valid.

Appeal by defendants from the Superior Court of Cook county; the Hon. JOSEPH SABATH, Judge, presiding. Heard in the first division of this court for the first district at the October term, 1923. Reversed. Opinion filed June 30, 1924. Rehearing denied July 11, 1924. *Certiorari* denied by Supreme Court (making opinion final).

KASIMIR P. GUGIS, P. B. SMITH and HARRY C. KINNE, for appellants.

HAROLD O. MULKS, for appellee.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

This appeal is by the defendants, The Lithuanian News Publishing Company, a corporation, and Peter Galskis and Joseph Szmotelis, who are respectively the president and secretary thereof, from an order directing that a peremptory writ of mandamus issue

requiring the immediate transfer and registry of cer-. tain certificates of stock in the corporation to the name of the relator, Vincent Rudaitis. The matter was heard by the court upon the petition of the relator, the answers of the respondents and reply of the relator thereto, together with evidence taken in which, however, there was practically no contradiction.

The controlling facts seem to be that the petitioner and relator is the holder for value of certificates representing one hundred shares of the capital stock of the defendant corporation. These certificates have been duly indorsed by the persons who appear from the books of the corporation to be the owners thereof. A demand was made for the transfer, which was refused. The defendant corporation was organized for pecuniary profit, under the laws of Illinois, on February 15, 1914, with an authorized capital stock of $15,000 divided into 1,500 shares at the par value of $10 each.

The object for which it was incorporated was stated to be "to publish in the Lithuanian language a newspaper, books, pamphlets and other publications, for educational purposes, and to carry on a general printing and stationary business." The duration for which it was incorporated was 99 years. At the time of the filing of the petition the approximate actual value of the stock was $16 a share.

Shortly after the incorporation of the company, and prior to the time that relator acquired the stock in question, by-laws were adopted which provided: "Directors have a right to refuse to sell or limit shares to individuals who, in the directors' opinion, may harm the newspaper, 'Naujienos,' principles or the corporation itself." The by-laws further provided in substance that any stockholder wishing to sell his shares must first notify the board of directors, informing them of the name of the person to whom he is going to sell his stock, and that the directors

have the right to object to such a sale, but that they must, in that case, find another purchaser who would be willing to pay the prevailing market price at that period.

On the certificates which the relator claims to own is plainly printed a provision as follows: ''This stock is not transferable unless first offered for sale to the company at its book value as established at the last semi-annual accounting immediatly preceding such sale.''

This clause has been printed on all certificates of stock issued by the company since it was incorporated.

Prior to the time when the former owners owned the capital stock represented by the certificates which it is now desired to have transferred, these former owners and holders never offered the shares of stock represented by said certificates to the Lithuanian News Publishing Company, a corporation, or to the directors or officers thereof, or any of them at any price whatsoever. The first knowledge that the corporation or the officers or directors thereof had of the sale of these shares of stock was when petitioner demanded the transfer of the same to him on the books of the company, which was on or about January 23, 1923. The defendants respectively president and secretary of the corporation refused to comply with this demand upon the ground that the shares of stock had not been first offered for sale to the corporation and the directors and officers of it. The relator never in fact had offered these shares of stock for sale to the defendant corporation or its officers or directors at any time, although its officers and directors all reside in the City of Chicago, Cook County, Illinois, and these former owners and the relator had ample opportunity to so offer the stock previous to the sale of the same to the relator and prior to the demand made for transfer thereof. It is conceded that Galskis and Szmotelis were and are the persons upon

whom the duty was and is imposed by the corporation to transfer certificates of stock where persons so demanding are entitled to the same, according to the statutes of the State of Illinois and the by-laws and articles of the corporation. The relator at the time of the trial was in possession of the certificates for one hundred shares of the stock, which is conceded to be the identical stock which defendants have refused and still refuse to transfer on the books of the company to the relator.

Oral evidence which is uncontradicted was introduced tending to show that "this by-law was voted by the stockholders, and the result was very nearly unanimous in favor of the by-laws;" that the restriction clause printed on the certificates of stock was several times discussed at meetings of the directors of the corporation; that the directors approved of it; that it was submitted to the stockholders, who read it and wanted to correct it and turned it over to the board of directors that it might be so corrected that everybody could understand well its meaning, and that the clause appears on every certificate of stock ever issued by the defendant corporation.

The court found that the by-law and restriction printed on the face of the certificates were unreasonable and void and that as the relator had complied with all of the valid and reasonable rules, regulations and by-laws of the defendant corporation he was entitled to the writ. The assignments of error argued are directed to this finding of the court, and these assignments raise the controlling question in.the case. Views of text-writers and authorities from many States, more or less conflicting, are cited in the briefs and quoted at length in the argument. The subject has, however, received attention from the legislature of Illinois, and attention should therefore first be given to the provisions of the statute. Section 15 of the Uniform Stock Transfer Act, entitled "An Act to Make Uniform the Law of Transfers of Shares of

Stock in Corporations," in force July 1, 1917, chapter 32, ¶ 243, of Cahill's Illinois Rev. Stat. 1923, provides: "There shall be no lien in favor of a corporation upon the shares represented by a certificate issued by such corporation and *there shall be no restriction* upon the transfer of shares so represented by virtue of any by-laws of such corporation, or otherwise, *unless the right of the corporation to such lien or the restriction is stated* upon the certificate." Prior to the enactment of this statute it had been held by the Supreme Court of the State in *People ex rel. McIlhany v. Chicago Live Stock Exchange,* 170 Ill. 556, that a corporation generally had the power to adopt for its guidance and government such rules and by-laws as were not contrary to any positive rule of law or public policy, and provided the same were not unreasonable. In *McNulta v. Corn Belt Bank,* 164 Ill. 427, it was held that a by-law which provided that "all stock in this bank shall be sold or transferred only upon the express condition that it will be voted in favor of all propositions submitted by the directors to increase the capital stock from time to time" was illegal and void, not only because the effect of the provision was to prevent freedom of action by the stockholders with reference to the increase of stock, but also because it attempted to limit the right to sell or transfer stock by imposing unreasonable conditions. The court said: "Shares of stock in a corporation are as transferable as any other kind of personal property; and all *unreasonable* attempts to restrain the right to transfer such shares are void as being against public policy." The Appellate Court for the Third District in *Finch v. Macoupin Telephone & Telegraph Co.,* 146 Ill. App. 158, held that a by-law of the corporation which contained a provision that stock could not be transferred without the consent of the president and a majority of the directors, where such provision had been made to ap-

pear upon part but not all of the certificates issued, could not defeat the right of a purchaser for value to have the certificates transferred upon the books of the corporation; and this was held to be true whether the restriction was considered merely in the light of a by-law of the corporation or as a contract between the parties. In *Douglas v. Aurora Daily News,* 160 Ill. App. 506, the Appellate Court for the Second District held that a clause in a certificate of stock which stated in substance that it was transferable only to some person first approved by the board of directors was illegal, but in view of the fact that the certificate upon its face gave notice to the purchaser of the right retained by the president of the corporation to repurchase the stock on terms therein expressed, which provision the evidence disclosed was for the benefit of the company, put the purchaser upon notice, the third party purchasing could acquire no greater right in the certificate than the original owner had. In 14 Corpus Juris, p. 669, sec. 1040, it is stated:

"It is generally held that a restriction is valid where it is properly imposed, which requires that, before stock is offered to outsiders, an opportunity to purchase the stock on certain terms shall be given for a stated period to the corporation   *   *   *   or other stockholders. But, on the other hand it has been held that such a restriction is an invalid restraint on alienation, and that a by-law containing such a restriction is invalid where it is not authorized by statute. It has been held, however, that if the by-law is invalid as a by-law it may be binding as an agreement of the stockholders who unanimously adopt it, and that, although such a by-law may be void, a stockholder may enter into a contract with the corporation whereby he will be bound by conditions requiring him to offer his shares to the corporation before he shall have the right to sell them to another, and the fact that the conditions are contained in an invalid by-law will not render his agreement void. An agreement, however,   *   *   *   be-

tween them and the organized body, prior to the time when the incorporation becomes complete, is invalid to prevent a transfer of stock without first giving the corporation an option to purchase, unless such agreement is ratified after complete organization.''

Such being the state of the law in this and other jurisdictions, and there being some conflict in the authorities, and also in conformity with what we believe to be the plain sense of the words used by the legislature, we hold that section 15 of the statute, *supra,* permits restrictions upon the general right to transfer certificates of stock, provided the restriction is reasonable and not contrary to any law or public policy. The ultimate question in this case, therefore, must be whether the provision appearing upon the face of the certificate is reasonable under all the circumstances. The trial judge was of the opinion that it was not and so found, and the judgment entered is in harmony with that finding. With that finding, however, this court, upon a consideration of all the evidence, is constrained to disagree.

In the first place, the corporation was a small one where, in the very nature of things, the association of the stockholders together would partake in a limited degree of the characteristics of a partnership. Moreover, the business in which the corporation was to be engaged is also persuasive. It is evident that an unfriendly or unsympathetic stockholder might, either with an ulterior purpose or otherwise, cause serious injury to the newspaper enterprise which the defendant corporation was organized to promote. Provision on the certificate seems to have been in harmony at least with the spirit of the by-law and to have been well designed not only for the interest of the stockholder insofar as his right to transfer his shares was concerned, but also for the best interests of the whole enterprise.

For these reasons the judgment of the trial court is reversed.

*Reversed.*

McSURELY and JOHNSTON, JJ., concur.