The People of the State of Illinois ex rel. Robert Malcom, Appellant, v. Lake Sand Corporation et al., Appellees.

Gen. No. 32,988.

Matchett, J., dissents.

McCulloch & McCulloch, for appellant; Grover C. McLaren and William D. Doggett, of counsel.

Peden, Kahn & Murphy and Brown, Fox & Blumberg, for appellees; Harry A. Kahn, Jacob Logan Fox and Lionel A. Mincer, of counsel.

Mr. Presiding Justice O'Connor delivered the opinion of the court.

Robert Malcom filed a petition against defendants to compel them to transfer to him upon the books of the Lake Sand Corporation 110 shares of the capital stock of that company. The case was tried upon a stipulation of facts and upon consideration the court decided in favor of the defendants and this appeal followed.

From the stipulation of facts it appears that the defendant J. T. McDonough was the owner of 110 shares of the capital stock of the defendant Lake Sand Corporation, and a stock certificate was issued by the corporation to him for the 110 shares; that he afterwards borrowed $7,000 from the petitioner, Malcom, pledging his certificate of stock as collateral security and at the time indorsing the certificate to Malcom; that McDonough deposited the $7,000 to the credit of the Lake Sand Corporation, and afterwards by a check of the corporation and another check he paid Malcom on account of the loan, thereby reducing the balance due from him to Malcom to $5,000. Malcom still retained the certificate for the 110 shares. Shortly before McDonough's loan became due the defendant corporation learned that he had misappropriated large sums of its money to his own use, and about a month prior to the maturity of the balance of the loan of $5,000 the

corporation took an assignment from McDonough of all his right, title and interest in and to the stock certificate.

It further appears that in January, 1925, prior to the making of the loan, all of the stockholders of the corporation entered into a written agreement which was adopted by the corporation as a by-law. The material parts of that agreement, so far as the instant case is concerned, are contained in paragraphs third, third "A" and seven, and are as follows:

"*Third:* IT IS FURTHER MUTUALLY AGREED between the parties hereto that we shall not buy or sell any shares of stock of the said Lake Sand Corporation, without the written consent of all the undersigned parties, except the parties hereto may buy or sell from one to the other without consent thereto first had; and should we desire to sell or dispose of our stock in said corporation, or any part thereof, then the purchaser or purchasers, before purchasing, shall first meet with the approval and consent of a majority of the parties hereto, and before accepting said purchaser or purchasers, he or they shall become a party to this agreement and be equally bound to the terms and provisions hereof, as well as the respective parties hereto, as if he or they had entered into the same originally.

"*Third* 'A':  IT IS FURTHER MUTUALLY AGREED between the parties hereto that the *third paragraph* hereof be printed in red ink upon the margin of the face of all stock certificates of the said Lake Sand Corporation. . . .

"*Seventh:* IT IS FURTHER AGREED between the parties hereto that in the event it becomes necessary for any of the parties hereto to sell his or her stock of the Lake Sand Corporation, that it first submit the sale thereof to the corporation known as the Lake Sand Corporation, except as herein otherwise provided in Paragraph Three; the price of which stock shall be governed by the book value of the corporation and in the event the

corporation declines to purchase such stock then the same may be submitted for sale to any of the parties hereto, as provided in Paragraph Three hereof, and in the event they decline to purchase, then the same may be sold to any one who desires to purchase the same. This paragraph in no wise to affect or alter Paragraph Three hereof.''

As stated, this agreement was signed by all the stockholders, including McDonough. At the maturity of the loan Malcom offered to surrender the certificate to the corporation upon payment of the amount remaining due to him from McDonough. The defendant corporation refused on the ground that Malcom had acquired no right in the certificate because paragraph three of the agreement above quoted was printed on the stock certificate and therefore Malcom took the certificate with notice that McDonough had no right to pledge or transfer it.

It further appears from the stipulation of facts that thereafter Malcom, after giving notice pursuant to the collateral clause in the $5,000 note, offered the certificate at public sale to the highest bidder; that defendant corporation was represented at such sale and when the stock was offered the defendants' representative advised those present that any attempted sale would not pass good title to the stock on account of the restriction contained in paragraph three above mentioned. Malcom being the highest bidder at the sale, the stock was sold to him. Afterwards he tendered the certificate to the company and demanded that one be issued in his name for the 110 shares of stock. The demand was refused and the instant case was instituted.

It is conceded that under the law a restriction may be placed upon the sale of stock of a corporation which is not unreasonable and not contrary to law or public policy, provided it is printed upon the stock certifi-

cates. *People v. Galskis*, 233 Ill. App. 414; section 15.
Uniform Stock Transfer Act, Cahill's St. 1927, ch. 32,
¶ 243. Section 15 provides:

"There shall be no lien in favor of a corporation
upon the shares represented by a certificate issued by
such corporation and there shall be no restriction upon
the transfer of shares so represented by virtue of any
by-laws of such corporation, or otherwise, unless the
right of the corporation to such lien or the restriction
is stated upon the certificate."

Printed across the end of the face of the stock cer-
tificate is the following:

"Pursuant to agreement dated January 2, 1925, be-
tween all the stockholders, the following is the Third
Paragraph thereof:

" '*Third*. IT IS FURTHER MUTUALLY AGREED between
the parties hereto that we shall not buy or sell any
shares of stock of the said Lake Sand Corporation,
without the written consent of all the undersigned par-
ties, except the parties hereto may buy or sell from one
to the other without consent thereto first had; and
should we desire to sell or dispose of our stock in said
Corporation, or any part thereof, then the purchaser
or purchasers, before purchasing, shall first meet with
the approval and consent of a majority of the parties
hereto, and before accepting said purchaser or pur-
chasers, he or they shall become a party to this agree-
ment and be equally bound to the terms and provisions
thereof, as well as the respective parties hereto, as if
he or they had entered into the same originally.' "

The defendants contend that by virtue of this re-
striction printed on the stock certificate, the attempted
pledging of the stock to Malcom was unauthorized and
void.

The restriction printed on this certificate, if held
valid, would authorize a majority of the stockholders
of the company to absolutely prevent a stockholder

from transferring his shares of stock in the company. It provides that no stockholder may buy or sell any share of stock in the corporation without the written consent of all the stockholders, except the sale is made between the stockholders themselves, which may be done without such consent; that if a stockholder desired to sell to anyone other than a stockholder, the purchaser, before purchasing, should first meet with the approval and consent of a majority of the stockholders. Similar restrictions have been held to be unreasonable and void. In the *Galskis* case, *supra,* we quoted from *McNulta v. Corn Belt Bank,* 164 Ill. 427, the following:

"Shares of stock in a corporation are as transferable as any other kind of personal property; and all *unreasonable* attempts to restrain the right to transfer such shares are void as being against public policy."

We think that the restriction printed upon the stock certificate was void because a majority of the stockholders could prevent a sale.

But the defendants further contend that, since there was printed on the face of the stock certificate the following: "Pursuant to agreement dated January 2, 1925, between all the stockholders, the following is the Third Paragraph thereof:" (then follows the third paragraph), Malcom was put upon notice of the terms of the entire contract of January 2, 1925, including paragraph seven, and that by paragraph seven a stockholder might under the conditions named in that paragraph sell his stock to anyone desiring to purchase it and that since Malcom had notice of this provision, which is a valid and binding provision, the pledging of the stock to him by McDonough was illegal and unauthorized. We are unable to concur in this contention. By paragraph seven it is provided, in effect, that if a stockholder desires to sell his stock he shall first offer

it to the corporation, except as otherwise provided in the third paragraph (which provides that one stockholder might without any qualification sell to another) that if the corporation declines to purchase the stock, the owner may offer it for sale to any of the parties to the agreement, as provided in paragraph three, and if the persons to whom the stock is so offered refuse to buy, then the owner may sell it to anyone who desires to purchase it. But it will be noted that immediately following this provision is the following: "This paragraph in no wise to affect or alter Paragraph Three hereof."

We think this contention is unsound and that all that Malcom was charged with notice of was the provision of the third paragraph, because that paragraph was the only one printed, on the stock certificate and it is complete in itself. Moreover, even if he were put upon notice of both these paragraphs, it would be unavailing because paragraph seven expressly states that that paragraph shall in no wise affect or alter the third paragraph, and since that paragraph was void for the reasons hereinbefore stated, the pledging of the stock by McDonough was not unauthorized.

A further contention is made that, even if it be held that Malcom did not have notice of the restrictions placed upon the transfer of the stock at the time it was pledged to him, he was put upon notice of such restrictions prior to the time the stock was sold at public sale; and that since Malcom in the instant case claims to be the owner of the stock he took it with notice of the restrictions. We think this argument is unsound. If the pledging of the stock to Malcom was legal and authorized (as we hold it was), Malcom having parted with his money, it would be going farther than the law would warrant to hold that he could not enforce his pledge by a valid sale of the stock because he learned in the interim that the pledging of the stock was unau-

thorized. Any notice brought to Malcom after the stock had been pledged could not defeat his lien.

The judgment of the circuit court of Cook county is reversed and the cause remanded with directions to award the writ of mandamus, as prayed for in the petition.

*Reversed and remanded with directions.*

McSurely, J., concurs.

Matchett, J., dissents.