**WARNER & SWASEY CO. v. RUSTER-HOLZ.**

No. 232 Civil.

District Court, D. Minnesota, Third Division.
Oct. 27, 1941.

499

W. T. Kinder, Thomas H. Jones and Frank E. Joseph, all of Cleveland, Ohio, and Cleon Headley and David W. Raudenbush, both of St. Paul, Minn., for plaintiff.

Theophil Rusterholz, Arthur A. Stewart, and James S. Kean, all of St. Paul, Minn., for defendant.

SULLIVAN, District Judge.

The plaintiff has moved for summary judgment pursuant to Rule 56, Rules of Civil Procedure, Title 28, U.S.C.A. following section 723c, in its favor. The defendant has made a like motion for judgment in her favor. The motions are based upon the pleadings and the stipulation of facts filed herein. It is unnecessary to recite the facts, since the same are fully set out in the stipulation.

The plaintiff's cause of action is based upon the so-called option agreement contained in the trust instrument, and also upon the agreement between plaintiff, Miss Swasey and the trustee, dated August 20, 1940. The trust agreement and the agreement of August 20, 1940, are set out fully in the stipulation of facts.

The plaintiff sues for a specific performance, and in the event the defendant is unable to perform, for the value of said stock. It has been stipulated between the parties that if the Court should determine that the defendant was obligated under either of said agreements, or both, to offer to sell to the plaintiff said shares of stock, then the Court may enter an appropriate judgment or decree for specific performance of such obligation by the defendant, since the defendant has at this time in her hands the identical stock referred to in the complaint herein.

The defendant prays that the plaintiff be required to issue to defendant a new certificate of stock for 8,760 shares of common stock of plaintiff, free from any and all restrictions.

It is the contention of the defendant that (1) the trust agreement gave to Miss Swasey a vested interest in said stock, which became absolute upon the death of the settlor, free from any right in the plaintiff to buy the stock; (2) if the trust agreement be determined to create a restriction in plaintiff's favor, that restriction is void for the reasons that (a) it violates the rule against perpetuities and the rule against restraints on alienation; (b) it is repugnant to the gift to the beneficiaries; (3) the agreement of August 20, 1940, is void for the reasons that it is a fraudulent exercise of a power in breach of a fiduciary relationship, lacks consideration, was exercised under a mutual mistake of a material fact, is not binding as a practical construction of the trust, violates the rule against perpetuities, and that against restraints of alienation; (4) if it be held that the provision in the trust instrument providing for an option and the agreement of August 20, 1940, is valid, the executrix should be allowed a reasonable time within which to make the offer the option provides for.

The defendant contends, first, that the option clause in the trust instrument is void for the reasons that it violates the rule against restraints of alienation and the rule against perpetuities, and that it is repugnant to the gift to the beneficiary. Defendant also contends that the agreement of August 20th is void on the first two grounds mentioned above.

In considering the trust provision which is under attack, the Court should attempt to read out of the language used in the questioned instrument the intention of Mr. Swasey, the settlor, that is, an attempt must be made to ascertain his intentions from the instrument itself and the language used therein, and to give it effect insofar as it appears reasonably certain and not in conflict with the law.

In construing the terms of a trust or will it is the unquestioned rule that where two possible constructions may be open the Court will adopt that construction which will result in sustaining the questioned provision to the end that the intention of the settlor or testator may be carried out. Shoemaker et al. v. Newman et al., 62 App.D.C. 120, 65 F.2d 208, 89 A. L.R. 1034.

There was a gift of the stock involved to Miss Swasey, absolute, but with certain restrictions attached thereto. It has been stipulated that the corporation was a so-called "closed corporation", that its stock

at the time of the execution of the trust agreement was held by comparatively few persons with no trading in its shares on the open market. The trust instrument gave an option to the corporation to purchase the shares of stock referred to in the trust instrument. The purpose of giving this option by the settlor is of no immediate importance here. It may have been for the purpose of keeping from the organization undesirable stockholders, and, no doubt, the intention of the settlor in giving the option was for the benefit and general welfare of the corporation and its stockholders. The settlor's intention is clear that in the event of a desire on the part of any of the beneficiaries to sell the stock which had been given to them, the beneficiary was required to offer said stock to the corporation, and in the event the corporation declined to purchase said stock, the beneficiary would be free to dispose of the same to other persons. In the event of the death of any beneficiary and upon said stock passing by devise or descent, the corporation was then to have the right to purchase said stock. The settlor intended that the option granted to the corporation was to become effective upon the happening of any of the above events. The trust clause provided that before delivery of the stock by the trustee to the beneficiary, the beneficiary was required to sign an agreement to the effect that in the event of selling, disposing of, or upon the death of the beneficiary, the "management" was to have the right to purchase the stock of the beneficiary. It set out the formula for ascertaining the selling price. The beneficiary was to sign an agreement before the delivery of stock to her, the terms of which were to be determined by the trustee and the directors of the corporation. The trustee was not to deliver the stock until he had obtained the signed agreement of the beneficiary setting out the terms and conditions of the option in favor of the corporation. If the trustee were to turn over the stock to the beneficiary without obtaining such an agreement, he would be guilty of a violation of the terms and conditions of the trust.

In the trust agreement itself, a definite and explicit restriction was placed upon the gift to the beneficiary. An option to purchase said stock for a definite price was set out. The option was specific in all its terms, save and except possibly the time within which said option was to be exer-cised. While the language of the option is not specific in this respect, it provides that the option must be exercised upon the happening of any of the three events, sale or disposition by the beneficiary during her lifetime, or upon her death.

The defendant urges that the option is a perpetual one, that the corporation may indefinitely and during successive lives far beyond the rule, exercise the option granted to it, and that the exercise of the option is a contingency which may never occur within the limitations of the rule against perpetuities. It seems clear that the exercise of the option could only occur during the lifetime of the beneficiary, in case of disposal or sale or following the death of the beneficiary during the administration of her estate.

While the trust agreement makes no provision in specific language as to the number of times the plaintiff may seek to exercise its option, the trust instrument provides for an option, not for successive options, and this is confirmed by further language appearing in the trust instrument, which provides that the price fixed in the happening of any of the three contingencies shall be the "book value as determined by the closing of the company's books last prior to the date of such disposal."

Apparently it was the intention of the settlor to fix the selling price of the stock as of the date of the happening of any of the above three contingencies. It would be unreasonable to fix the value of the stock as of the date of any of those three events, and later, at some remote period, permit the corporation to then exercise the option. Any presumption indulged in must be one in favor of the validity of a bequest in a trust instrument. The settlor is presumed to have known the law, and to have so worded his bequest as to give it validity. The intention of the settlor must be gathered from the entire instrument.

The general rule of law is that restraints on the alienation of an absolute interest in personalty are void. But does this option restrict in any degree the alienation of the stock? It is said in New England Trust Company v. Abbott, 162 Mass. 148, 38 N.E. 432, 27 L.R.A. 271, that contracts restricting in a degree, but not prohibiting the transfer of shares of stock are not unusual, and are generally recognized as valid. This is particularly true

where the restrictions form a part of the articles of organization and are matters of contract between the shareholders. The option provision in the trust in the contract does not restrict the alienation of the stock, but on the contrary is an aid to a sale of the stock in that it provides a potential purchaser for the stock. It requires, in the event of a desire on the part of the beneficiary to sell or dispose of the stock, that the stockholder, before offering the same for sale to others, give the plaintiff the refusal thereof. Compare Potter v. Couch, 141 U.S. 296, 11 S.Ct. 1005, 35 L.Ed. 721; In re Laun, 146 Wis. 252, 131 N.W. 366.

The Ohio Court, in considering an option restriction in the by-laws of a corporation (authorized by the statutes of Delaware, the state of incorporation) in the case of Nicholson v. Franklin Brewing Company, reported in 82 Ohio St. 94, 91 N.E. 991, 995, 137 Am.St.Rep. 764, 19 Ann.Cas. 699, stated: "The by-law here called in question contains no suggestion of a purpose to prevent the alienation of stock nor to restrict it beyond reasons suggested by a consideration of the welfare of the corporation and the express provisions of the statute. It interposes no permanent impediment to the transfer, providing only for an option in the directors for 30 days as a reasonable opportunity to them to dispose of stock to persons deemed desirable as holders." See: Model Clothing House et al. v. Dickinson et al., 146 Minn. 367, 178 N.W. 957.

■ I am of the opinion that the option in the trust instrument and the agreement of August 20th does not constitute a bar to the sale and disposition of the stock. I am unable to agree with the contention that an option to purchase given by the settlor resulted in a repugnancy to the gift to the beneficiary. The explicit mandate of the settlor to the trustee that "prior to the delivery" of the stock certificates "each beneficiary shall sign an agreement * * *" cannot be disregarded. This language is certain and specific that the gift to the beneficiary was restricted to the extent of the option granted.

Does the restriction of the option in the fifth paragraph of the trust instrument, and the option provision in the agreement, violate the rule against perpetuities?

At all material times there was in effect in Ohio a statute, Section 10512-8 of the Ohio General Code, which provided, inter alia, that no interest in real or personal property shall be good unless it must vest, if at all, not later than twenty-one years after the life or lives in being at the creation of the interest. This is the common law rule against perpetuities.

The Ohio court in Joseph Schonthal Company v. Village of Sylvania et al., 60 Ohio App. 407, 21 N.E.2d 1008, 1010, states: "The common-law rule referred to provided that no estate could be created to commence in the future unless it must vest, if at all, within twenty-one years after a life or lives in being at the creation of the interest. The establishment and application of the rule was to prevent property from being tied up in such manner as to make it inalienable, or in such way as to take it out of commerce and the general and free circulation of property."

■ The general rule is that an option contract vests no right, legal or equitable, in the optionee in the subject matter of the contract prior to his acceptance of the terms of the option. See James on Option Contracts, Section 501 et seq. This appears to be the rule in Ohio.

In Sause v. Ward et al., 7 Ohio App. 446, at pages 450, 451, the Court said: "A written optional contract for a nominal consideration given by the owner to sell his real estate is not a sale thereof, but only a standing offer to sell to the person, and at the price named therein, if accepted within the time stated in the optional contract. The option confers no right to the holder of the option in the real estate, but it is only the sale of a right to him to become the purchaser upon the acceptance thereof within the time stated. Until the acceptance of the offer according to the terms thereof, it does not ripen into a sale of the real estate or become a completed contract between the parties for the sale thereof. It is only after the holder of the option has accepted the option that he becomes the equitable owner of the property, and can compel specific performance of the contract in a court of equity."

■ The option created no interest whatsoever in the stock, conveyed no title to the stock and created no rights in the optionee save and except rights in personam. See Womack v. Coleman et al., 92 Minn. 328, 100 N.W. 9, at page 11.

■ The purpose of the rule against perpetuities was to prevent the tying up of land and its removal from commerce for

long periods of time by the creation of future estates which would prevent the alienation of lands. The application of the rule has been extended by the common law and statutes of several states, including Ohio, to personal property. However, there is respectable authority to the effect that under the modern view the rule has no application to an unlimited option for the purchase of corporate stock.

The Delaware court, in the case of Kingston et al. v. Home Life Insurance Company of America et al., 11 Del.Ch. 258, 101 A. 898, 901, considered the application of the rule to an option without limit as to time for the purchase of a large number of shares of the capital stock of the defendant insurance company, and its conclusion was that the rule was not applicable, since there was no principle of public policy involved, and the Court concluded by saying, " * * * I do not feel justified in extending it to the stock option * * * ".

The Ohio courts have not passed upon the precise question, although it had this to say in considering a by-law restriction on the sale of stock in the Nicholson v. Franklin Brewing Company case, supra, 91 N.E. on page 995: "The statute having recognized the lawfulness of the purpose for which the corporation is formed and having empowered it to make by-laws in furtherance of that purpose, expressly including the issuance and transfer of stock within the subjects for regulation by by-laws, we find no reason for saying that the by-law is invalid." The option considered in the above case was based on a by-law, while here the option is founded on a trust instrument and an agreement between stockholder and corporation.

In 42 Harvard Law Review, pages 455, 456, it is stated that: "Where there has been some express or implied legislative recognition of a corporation's power to impose restrictions, their validity can no longer be doubted."

The plaintiff, under the statute law of Ohio, at all material times, has had the legal power and right to purchase its own shares of stock, and since August 20, 1940, by virtue of an amendment of the articles of incorporation, for which defendant's testatrix has voted by proxy, has possessed the right and power to purchase its own shares for the purpose of an employee ownership plan.

█ Sanction, in the law of Ohio and the plaintiff's articles, to restrict disposition of stock is provided. The option provided for in the trust instrument and in the agreement is not in conflict with the laws of Ohio relating to corporations.

█ At the times in question the Uniform Stock Transfer Act, Section 8673-15, General Code of Ohio, was in force and effect. This Act has been held to authorize stock restrictions affecting a sale and disposition of stock. See Hassel v. Pohle, 214 App.Div. 654, 212 N.Y.S. 561; People ex rel. Rudaitis v. Galskis, 233 Ill.App. 414; People ex rel. Malcom v. Lake Sand Corporation, 251 Ill.App. 499.

No question could be raised as to a stock restriction giving the corporation a perpetual option to purchase, if the same affected treasury stock issued and sold. If that be true, is the Court to differentiate between the restriction imposed upon the stock involved herein, and a restriction imposed on stock originally issued? It is my opinion that stock disposed of by a holder thereof may be restricted by an option provision for repurchase in the same manner and way as stock originally issued by the corporation. In either instance the option is based on contract.

█ Assuming that the rule against perpetuities is applicable, what do we find in this case? As stated hereinbefore, the option in the trust instrument and the agreement of August 20th must be exercised either upon the sale or disposal of the stock during the lifetime of the beneficiary or upon its passing by descent or devise.

The defendant urges that since a representative for a deceased beneficiary's estate need not necessarily be appointed within twenty-one years after death, the option provided in the agreement of August 20th might be exercised at too remote a time. Under Minnesota law the heirs of a deceased beneficiary domiciled in Minnesota cannot indefinitely postpone the institution of probate proceedings. Creditors have the right to institute such a proceeding upon the failure or delay of the next of kin to proceed for a period of more than thirty days after the death of the decedent. In the event of failure of the next of kin and creditors of the estate of the decedent to initiate probate proceedings, action, if any, to be successfully instituted and main-

tained against the holders of the stock, would necessarily have to be instituted within a period of six years and thirty days from and after the death of the beneficiary by reason of the statute of limitations. Mason's Minnesota Statutes, 1927, Section 9191 subd. 1, 1940 Supplement, 8992-68. Any claim to be made upon the option would necessarily have to be made within the applicable statute of limitations, so it seems conclusive that the exercise of the option would necessarily have to occur before the expiration of twenty-one years after the death of the beneficiary.

The stock involved in this suit was not delivered by the trustee to the beneficiaries for a considerable period of time after Mr. Swasey's death, due to the usual delays incident to probating and closing an estate. However, prior to July 31, 1940, the officers of the plaintiff prepared the agreement dated August 20, 1940 (Exhibit "B" herein). The agreement was executed by the trustee, plaintiff, and each of the eight beneficiaries who were to receive plaintiff's common stock under Mr. Swasey's trust. The decedent executed this agreement on August 2, 1940. The trust instrument provided an option to the management. The agreement uses the word "company" instead of "management". The trust instrument did not provide expressly for the clearing of the stock from option by at once offering it, in the event of the three contingencies set out. The agreement expressly provides for the exercise of the option. The trust instrument provided the purchase price was to be based on the "book value". The agreement defines "book value" to be inclusive of a write-off of $1,148,201.49, subsequent to the making of the trust. The trust instrument did not specify who was to determine the "book value", while the agreement provided that the same was to be determined by certified public accountants. The trust instrument did not expressly provide for the exercise of the option immediately upon the death of the beneficiaries. The agreement expressly provides for this.

It is the contention of the defendant that said agreement of August 20, 1940, is not in accordance with the terms of the trust instrument, and that the same is void for want of consideration. The defendant argues that the word "management" used in the trust agreement does not comprehend the word "company" used in the agreement. The term "management" means either officers or directors of the company or corporation. It does not mean the individuals who may constitute the management. Plainly, it was not the intention of Mr. Swasey to give an option to the individual officers of the corporation, for, if he intended to do so, he would have specifically mentioned the names of the officers, and would have provided in what proportion each individual was to be permitted to exercise the option he was conferring.

A corporation must necessarily act through its officers and agents. The "management" or "board of directors" of a corporation acts in a fiduciary capacity in the interest and for the benefit of the corporation. If the "management" was to receive property under an instrument in that name, no one would contend that it was the property of the "management", or of the personnel constituting the "management"; it would be the property of the corporation. The words "management" and "company", while not synonymous as used in the trust clause and agreement, connote the same meaning insofar as benefits and rights are conferred. The agreement makes definite and specific provisions for the clearance of the stock from the option, and for the immediate exercise of the option, in the event of the death of the beneficiary. The trust clause made no such explicit provision, but the implication and inference properly may be drawn that it was the intention to require the corporation to exercise the option in the manner provided for in the agreement. It interpreted the original writing and provided the procedure for carrying out the terms thereof. The claim of the defendant that the agreement of August 20, 1940, is wanting in consideration is without support in fact. The agreement was clarifying in purpose. It sought to settle potential disputes. It resulted in an adjustment of claims and rights between the corporation, the trustee and the beneficiaries, which might arise from varying interpretations of the trust clause. Where there are bona fide disputes or doubts as to the obligations between the parties, a settlement by the parties of those disputes constitutes sufficient consideration for a compromise agreement.

The Minnesota Court, in Perkins v. Frinka, 30 Minn. 241, 15 N.W. 115, 116, said: "Neither is it any defense that it

was afterwards judicially determined that tax deeds of this farm are valid. Where parties whose rights are questionable and doubtful, and who have equal means of ascertaining what their rights are, come together and settle these rights among themselves, a court must enforce the agreement to which they may fairly come at the time, although a judicial decision should afterwards be made showing that these rights were different from what they supposed them to be, on showing that one of them really had no rights at all and so nothing to forego." See: Grasselli v. Lowden, 11 Ohio St. 349, decided in 1860.

 All parties assented to the agreement and the record discloses no misunderstanding as to the terms and conditions of it. Even though the rights of the plaintiff were doubtful, or assuming that the trust clause was void, each of the parties had equal means of ascertaining what their rights were. If agreement was reached as to their rights, or claimed rights, it is binding and valid upon the parties. The plaintiff urges that the agreement is one between the parties defining and adjusting their respective rights, or claimed rights, under the trust clause. While it is true that beneficiaries cannot modify the terms of a trust, they may, by contract, make disposition of property rights acquired under a trust. Compare: Rogers v. Benz et al., 136 Minn. 83, 161 N.W. 395, 1056.

The defendant makes the further contention that at the time of the creation of the trust, and down to this date, the plaintiff corporation was and is without lawful authority to purchase its own stock. Section 8623-41(c), effective July 23, 1929, Ohio General Code, provides in substance that a corporation may purchase shares of any class issued by it to the extent of the surplus of the aggregate of its assets over the aggregate of its liabilities, plus stated capital, when authorized by the board of directors, when authorized by the articles. The foregoing statute was amended in 1939, Section 8623-41, in certain respects not here material.

The articles of incorporation of the plaintiff at all times herein involved provided as follows: "The Board of Directors shall have power from time to time to purchase outstanding shares of the corporation at such price and prices and upon such terms and conditions as it may decide to the extent of corporate surplus available for cash

dividends." It is stipulated by the parties that on April 19, 1933, and at all times thereafter, plaintiff had and now has a surplus available for cash dividends, and a surplus of the aggregate of its assets over the aggregate of its liabilities, plus stated capital, sufficient to purchase all of the shares of common stock, subject to the restrictions hereinbefore referred to, and to said trust agreement of April 13, 1933, and to the agreement of August 20, 1940.

An additional ground upon which Ohio corporations may properly undertake to purchase their own shares is provided for in Section 8623-36, Ohio General Code, which reads as follows: "A corporation may, upon such terms and restrictions as it may impose, provide and carry out a plan for the allotment and sale of any or all of its unissued shares, or of shares purchased or to be purchased, to the employees of the corporation or to the employees of subsidiary corporations or to a trustee on their behalf, and for the payment of such shares in installments or at one time, and for the establishment of a special fund or funds in which such employees during the period of their employment or other period of time may be privileged to share on such terms and conditions as may be imposed in respect thereof; provided, that shares otherwise subject to pre-emptive rights under the provisions of the preceding section may be allotted and sold under such plan free from such pre-emptive rights only with the written consent or vote of the holders of a majority of the shares entitled to exercise pre-emptive rights with respect thereto."

Section 8623-41 (3) gives this power to Ohio corporations to purchase its own stock: "For the purpose of resale or allotment to employees under the provisions of section 8623–36 of the General Code * * *."

 The plaintiff had at all times involved in this proceeding the legal power under the statute and the articles of incorporation, in light of its financial condition, to purchase the shares of its common stock, subject to the restrictions set out in the Swasey trust and the agreement of August 20, 1940.

 On August 20, 1940, the articles of incorporation of the plaintiff were amended so as to provide that all shares of common stock which might be re-acquired by the corporation pursuant to agreements, and other shares of common stock, should be

reserved for sale to officers and employees of the corporation upon such terms as the Board of Directors should determine. Defendant urges that the diversion of the option provided for in the Swasey trust· from the "management" of the corporation to the corporation itself constituted a fraudulent exercise of the Directors' power, in breach of a fiduciary relationship. The stockholders of the corporation, by unanimous vote, adopted the amendment. The sale by the company of shares to its employees was not a new thing in the policy of the plaintiff. These shares of stock which might be issued to officers and employees were in turn subject to the company's right of re-acquisition on certain conditions. I see no merit in this claim made by the defendant.

The defendant claims that the securing of the August 20, 1940, agreement was a fraudulent exercise of power in breach of a fiduciary relationship existing between the trustee, the corporation and Miss Swasey. Under the trust instrument and the agreement of August 20, 1940, the corporation was given a choice of purchasing defendant's testatrix's stock at a price to be determined in accordance with the provisions of the trust and agreement. If the formula for determining the selling price in the agreement is in substance the same as that in the trust agreement, or on a basis more favorable to the beneficiary than the trust instrument provided for, the defendant has no complaint. The facts disclose that the basis used to establish the selling price under the terms of the agreement of August 20, 1940, is more favorable to the beneficiary than the trust provision. The second instrument has defined "book value" to be inclusive of a write-off of $1,148,201.49 made in 1937, subsequent to the date of making the trust. The selling price, or the basis for such selling price, as set out in the agreement of August 20, 1940, was not the result of negotiation. The basis for determining the selling price was made by Mr. Swasey, the settlor, and not by the parties. Due to stock split-ups and the recapitalization of the plaintiff, the 146 shares of common stock set opposite the name of Miss Swasey in the trust instrument developed into 8,760 shares of said stock. Prior to the execution of the agreement of August 20, 1940, and the recapitalization of the plaintiff, its stock was not bought or sold generally, nor was it listed on any stock exchange. Under the recapitalization plan retirement of the preferred stock was effected. The capital stock of the plaintiff was greatly increased, and on August 26, 1940, 276,580 shares of common stock of the plaintiff, including 3,300 shares of unrestricted stock owned by Miss Swasey, were sold to certain underwriters and were thereafter sold to the public. Plaintiff's stock, since the last-mentioned date, has been bought and sold in the open market.

On August 20, 1940, the articles of incorporation of plaintiff were amended to provide for the re-acquisition by the corporation of all shares of stock subject to the right to purchase by the corporation, and for a reservation to the corporation for sale to officers and employees of the corporation upon such terms and conditions as the board of directors might from time to time determine. In determining the fairness of the August 20th agreement, the contract cannot be viewed in effect as one between the two parties thereto, for the reason that the contract constituted an element in the recapitalization and in the execution of the new policy of the corporation of selling its stock to the public generally.

Miss Swasey was fully informed of all steps in the recapitalization plan. She voted her stock at stockholders' meetings by proxy, in favor of all the steps taken. She and the seven other beneficiaries signed the August 20th agreement. She voted by proxy for the amendment of the articles, and approximately 3,400 stockholders have come into existence by reason of the sale of her unrestricted stock and other stock of the plaintiff corporation to the general public. She sold 3,300 shares of her unrestricted common stock for the sum of $67,-650, and the preferred stock which she held has been retired.

The market price on October 31, 1940, the first date after August 20, 1940, upon which a price is quoted, as appears from the record, is approximately twice that of the book value. This difference in price may be attributed to many circumstances, one of which, no doubt, is the free trading in the stock brought about by the change in the policy of the corporation. There is nothing in the record to indicate that Miss Swasey had any misgivings about the transactions, nor does it appear that the trustee or the corporation persuaded her to sign the August 20th agreement.

 While her status under the trust agreement could not be affected by her subsequent conduct, her acts in furtherance of, and her consent to, the plan of recapitalization, preclude successful attack by the defendant upon the validity of the agreement of August 20th and the by-law of the corporation controlling the disposition of such stock. Compare: Blue Mountain Forest Association v. Borrowe, 71 N.H. 69, 51 A. 670; Prindiville v. Johnson & Higgins, 92 N.J.Eq. 515, 113 A. 915; Searles v. Bar Harbor Banking & Trust Company, 128 Me. 34, 145 A. 391, 65 A.L.R. 1154; New England Trust Company v. Abbott (Mass.), supra.

The question now arises as to the date as of which the book value should be determined. The agreement of August 20th provides that in the event of the death of the beneficiary "his administrator or executor shall promptly, upon qualifying as such, deliver to the company an irrevocable offer in writing", and the agreement further provides that the book value of such shares shall be such as is shown by the books and records of the company at the close of business on the last day of the calendar month next preceding the date of the receipt of said offer by the company.

 Miss Swasey died September 24, 1940. On November 2nd following, the defendant was appointed executrix of her will. Under the Minnesota law an inventory of the deceased person's property is required to be filed within one month after the representative's appointment. The appraisal is required to be filed within two months after the appointment of appraisers. The proceeding in the Probate Court of Ramsey County, Minnesota, is a distinct proceeding, with jurisdiction in that Court over administrators and executors of estates. The representative of Miss Swasey's estate was subject to the orders of that Court. Before she could dispose of any of the property of said estate, it would be necessary for her to obtain an order from that Court authorizing such disposition. The Probate Court of Ramsey County unquestionably would not make any order for the disposition of the property of said estate until after the inventory and appraisal were filed. The certificate covering the shares of stock in controversy herein was not received by the defendant until December 3, 1940. Obviously she could not have offered the stock to the plaintiff before that date, and it also seems obvious that she could not offer the stock to the plaintiff prior to the date of filing her inventory and the appraisement, and upon leave of court being granted to her, authorizing her so to do, so it seems to me that the earliest date upon which the defendant could make a valid offer of stock to the plaintiff would have been during the month of February, 1941. Therefore, it is my conclusion that the book value of the stock should be determined as of January 31, 1941, that being the last day of the calendar month preceding the date upon which the defendant should have made a tender and offer of the stock to the plaintiff.

Findings of fact and conclusions of law in accordance herewith may be presented.