**In re ESTATE of B. Joseph RATH, Deceased.**

**The DETROIT BANK AND TRUST COMPANY, Executor, and Catherine Rath, Surviving Wife, Plaintiffs-Appellees,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 77–1403.**

United States Court of Appeals, Sixth Circuit.

Argued June 8, 1979.

Decided Oct. 19, 1979.

James K. Robinson, U. S. Atty., Detroit, Mich., M. Carr Ferguson, Asst. Atty. Gen., Michael L. Paup, Richard Farber, Gilbert E. Andrews, Dept. of Justice, Tax. Div., App. Section, Washington, D. C., for defendant-appellant.

James E. Beall, Beaumont, Smith & Harris, Detroit, Mich., for plaintiffs-appellees.

Before LIVELY, Circuit Judge, CECIL, Senior Circuit Judge, and BROWN, District Judge *.

CECIL, Senior Circuit Judge.

This is an appeal by the defendant-appellant, United States of America, from a judgment in the United States District Court for the Eastern District of Michigan granting a refund to the plaintiffs-appellees in an action for recovery of income taxes alleged to have been erroneously collected.

The case was submitted to the trial judge by counsel for the parties on a stipulation of facts.

As of March 4, 1964, B. Joseph Rath was the largest individual shareholder of the outstanding stock of the J. B. Rath Co., Inc., a Michigan corporation engaged in tool and die manufacture. At this time the corporation and Rath entered into a "Life Insurance Trust and Stock Purchase Agreement." Essentially, the agreement provided for the purchase by the corporation of Rath's stock in the event of his death with insurance proceeds. Pursuant to the agreement, Rath had a right to an assignment of ownership of the policy to himself or to his nominee for the cash surrender value of the policy, if the corporation decided to exercise its right, under stated circumstances, to terminate the policy. Among the insurance policies purchased pursuant to this agreement was Policy Number 28730243 of the Prudential Insurance Company for the face amount of $100,000. The corporation possessed all incidents of ownership, named itself beneficiary and paid all premiums until the sale of the stock to Perfect Mold Co., Inc. in 1968.

As of the beginning of 1968, Rath owned approximately 38% of the outstanding stock of the corporation and the remaining common stock was owned by seven other unrelated individuals. On February 6, 1968, Rath and all other stockholders of the corporation entered into an Agreement of Sale with Perfect Mold Co., Inc., whereby the company agreed to acquire all outstanding stock of the corporation for a cash purchase price. The closing of this agreement was consummated on March 15, 1968, at which time a memorandum of closing was executed by all parties. Rath directed that his rights to the policy in question be assigned to his wife, Catherine. At the closing, the policy was transferred by the corporation to Mrs. Rath in return for her payment of $11,600. This payment was made by Mrs. Rath with a check drawn on her account. At the time of transfer, the value of the policy for gift or estate tax purposes was $17,520.24.

At a special joint meeting of the shareholders and directors of the corporation on March 15, 1968, a resolution was adopted which provided in part:

"Further, the Vice-President and Secretary are hereby authorized to execute on behalf of this corporation the Release and Cancellation Agreement entered into between this corporation and B. Joseph Rath; each reciprocally and mutually terminating any rights and/or interests in the Life Insurance Trust and Stock Purchase Agreement entered into between

---

* The Honorable Bailey Brown, Chief Judge, United States District Court for the Western District of Tennessee, sitting by designation.

this corporation and B. Joseph Rath dated March 4, 1964. That in conjunction therewith and consistent with the Agreement of Cancellation between B. Joseph Rath and this corporation, in consideration of its cash surrender therefor, this corporation does hereby sell and assign to Catherine Rath, wife and nominee of B. Joseph Rath, its ownership and rights in the life insurance policy numbered 28730243 in the face amount of $100,000 covering the life of B. J. Rath issued by the Prudential Insurance Company."

A request for change of beneficiary to Catherine A. Rath was executed by the Secretary of the Corporation on April 17, 1968. In accordance with this request, the policy was amended on April 17, 1968 to provide in part,

"The policy is hereby amended to provide that, subject to such limitations as may be herein after set forth all legal incidents of ownership and control of the policy shall belong to the following owners: 'Catherine A. Rath, wife of the Insured, the estate of said wife, * * *'"

Catherine Rath made payments of the annual premiums in the amount of $5,727 for each of the years 1969 and 1970.

During the year 1968, the Insured made substantial gifts to his wife, Catherine, and to others. The Insured filed a gift tax return for the year 1968, in which his wife consented to have it considered that one half of the gifts to others were given by her.

B. Joseph Rath, the Insured, died April 23, 1970. The proceeds of the Prudential Insurance policy in the amount of $106,291.58, were paid to the wife, Catherine Rath, during the year 1970. A joint income tax return was filed on behalf of the deceased and his wife for the year 1970, but the proceeds of the insurance policy were not included as income.

The proceeds of the insurance policy were not included in the decedent's estate for federal estate tax purposes. Upon audit of the estate tax return, however, the Internal Revenue Service proposed to include them in the estate. At that time, the Service took the position that, if Rath himself had exercised the option to acquire the policy, and then had transferred the policy to his wife, an issue existed as to whether the transfer was a gift in contemplation of death. If it were such a transfer, the proceeds would be subject to the imposition of estate taxes. Thereafter, however, this claim was not pursued and it is not now involved in this litigation.

After the Internal Revenue Service began auditing the decedent's estate tax return, it notified plaintiffs' attorney that it would assert an income tax deficiency against plaintiffs' 1970 income tax return by reason of the proceeds of the insurance policy in question. Thereafter, the attorney prepared an amendment to the 1968 gift tax return above mentioned. Attached to this amended return was "Schedule A" which purports to explain the transaction concerning the Prudential policy of insurance involved herein. We attach this schedule hereto as "Appendix A."

The Internal Revenue Service determined that $83,237.58 of the proceeds of the policy constituted the receipt of ordinary income by Catherine Rath and created a tax deficiency of $44,528.94 with interest in the amount of $7,693.82. The amount of taxable income was arrived at by deducting the $11,600 Catherine paid for the policy and the two years' premiums paid by her from the $106,291.58 proceeds of the policy. This deficiency was paid by the wife, Catherine Rath, and an action was brought by her for refund of the entire amount on or about February 18, 1975.

Both parties moved for summary judgment. The district judge sustained the motion of plaintiffs and granted judgment in the sum of $52,219.63, the full amount of the taxes and interest paid, together with interest according to law.

The question here is whether the decedent had an ownership interest in the policy which could be the subject of transfer to his wife. In other words, was the policy first transferred to the Insured and then by him transferred to his wife. The pertinent Sec-

tion of the Internal Revenue Code governing this issue provides as follows:

### CERTAIN DEATH BENEFITS

"SEC. 101

(a) *Proceeds of Life Insurance Contracts Payable by Reason of Death.*—

(1) *General Rule.*—Except as otherwise provided in paragraph (2) and in subsection (d), gross income does not include amounts received (whether in a single sum or otherwise) under a life insurance contract, if such amounts are paid by reason of the death of the insured.

(2) *Transfer for valuable consideration.* —In the case of a transfer for a valuable consideration, by assignment or otherwise, of a life insurance contract or any interest therein, the amount excluded from gross income by paragraph (1) shall not exceed an amount equal to the sum of the actual value of such consideration and the premiums and other amounts subsequently paid by the transferee. The preceding sentence shall not apply in the case of such a transfer—

(A) if such contract or interest therein has a basis for determining gain or loss in the hands of a transferee determined in whole or in part by reference to such basis of such contract or interest therein in the hands of the transferor, or

(B) if such transfer is to the insured, to a partner of the insured, to a partnership in which the insured is a partner, or to a corporation in which the insured is a shareholder or officer."

The transaction herein involved began with a "Life Insurance and Stock Purchase Agreement" heretofore referred to, executed between B. Joseph Rath, individual stockholder, and the J. B. Rath Co., Inc. (the corporation) whereby the insurance policy in question for $100,000 was purchased from the Prudential Insurance Co. At the outset the corporation possessed all incidents of ownership, named itself beneficiary and paid all premiums until the sale of the stock to Perfect Mold Co., Inc. in 1968. As we have heretofore stated, B. Joseph Rath, stockholder, hereafter referred to as deceased, had a right to an assignment of the policy, either to himself or his nominee, for the cash surrender value of the policy in the event the corporation wished to surrender the policy. This right is referred to as an option to purchase.

Since the policy came into the possession of Catherine Rath, wife of the deceased, our first inquiry is by what procedure she obtained it. On February 6, 1968, the stockholders of the corporation entered into an agreement with Perfect Mold Co., Inc. whereby the company agreed to acquire all of the outstanding stock of the corporation for a cash purchase price. As a part of this agreement, it was agreed that the corporation should sell to the deceased or his nominee the insurance policy in question for a purchase price equal to the cash surrender value of the policy.

Accordingly, at the time of the closing of the stock sale agreement on March 15, 1968, Catherine Rath paid the corporation $11,600, the cash surrender value of the policy, and the corporation transferred the policy to her. She executed this payment by a check drawn on her own bank account in the amount of $11,600. On the face of it, it would appear to be a "Transfer for valuable consideration" in accordance with Section 101(a)(2) whereby only the amount of the consideration paid for the policy and the premiums paid thereon would be excluded from the payment of income tax on the proceeds of the policy.

The real issue, as framed by the district judge, is whether Mr. Rath, the deceased, through his actions, exercised his option to purchase. It is agreed between the parties that an option does not, per se, create an interest in rem but is only enforceable as a personal right. The trial court considers that, since the facts are stipulated by the parties, neither can present any additional evidence but that the court must draw certain inferences from the record.

In support of his conclusion, the trial judge states the following:

"One inference which appears from the context of this transaction is that Mr. Rath must have acted in some way to effect the ultimate transfer of the insurance policy from the Company to Mrs. Rath. Absent some action on his part, Mrs. Rath neither had any prior interest in the policy nor did she have any interest or right in the option. She could not exercise the option; nor could the Company legally transfer the policy to her during the option period without incurring legal liability to Mr. Rath or without prior authority from him. It would appear most plausible to this Court that Mr. Rath was combining or merging two steps into one; the transfer from the Company to himself and the subsequent transfer to his wife were documented as one transaction. Such a situation is particularly apropos to the application of the general rule which directs the Court to look past the form of the transaction to its substance. Certainly this rule works both ways—for the government and for the taxpayer.

"In this instance the Court concludes that the substance and result of plaintiff's single transaction was identical to that of the two separate transactions described above, and since he would have incurred no tax liability under the latter, he should not be penalized in this instance by merging the two steps."

There is nothing in the record to show that there were any actions on the part of the deceased whereby there was a transfer of the policy from the corporation to him and a subsequent transfer from himself to his wife, Catherine. To make such a finding, from an inference drawn from the stipulated facts, is entirely unwarranted.

In further support of his conclusion, the trial judge states that, while it is true that the funds used to purchase the policy came from the wife's account, it is equally true that the funds are traceable to the deceased and provided the funds for the purchase. Therefore, the court concludes that, as the two steps of this transaction were merged, the funds are properly attributable to the deceased and the transfer was for valuable consideration to him.

Counsel for appellees also argues that the money with which the wife paid the corporation for the policy in question is attributable to the deceased and came from him. While it is true that the deceased gave his wife a substantial sum of money, on or about the time of the transaction in question, there is nothing in the record to indicate that he gave it to her for the purchase of the insurance policy or that she used it for that purpose.

The decedent could have exercised his option and taken an assignment of the policy to himself. Thus, he could then have transferred the policy to his wife with the effect the appellees now claim with respect to income tax. Even though he may have given her the money with which she made the purchase, we cannot infer that the decedent made the purchase and had the policy first transferred to himself. Why would he choose to do it in that round about way, which would have raised an issue as to whether he was making a gift in contemplation of death, the proceeds of which would be taxable to his estate? We must assume that, for reasons best known to himself, the deceased preferred not to follow that alternate course which was open to him. We cannot make a contract for him.

We will address specifically the issue of whether the deceased exercised his option to purchase the insurance policy in question from the corporation. It is agreed, and so stated heretofore, that the deceased's option created no ownership interest in him in the policy. The trial judge said:

"Therefore the real issue here can be rephrased to ask whether Mr. Rath, through his actions, exercised his option."

This is, indeed, the crux of this case and is the thread which holds the case together for the plaintiffs—the theory that the deceased took a transfer of the policy to himself and then transferred it to his wife.

Counsel for plaintiffs argues that, under the stipulated facts and exhibits, decedent clearly exercised the option to purchase the policy. In support of this argument he cites

the first part of the corporation resolution that the corporation and decedent are cancelling the 1964 Life Insurance Trust and Stock Purchase Agreement and mutually releasing each other of all rights and obligations thereunder. He then quotes from the resolution as follows:

> "* * * in conjunction therewith and consistent with the Agreement of Cancellation between B. Joseph Rath and this corporation, in consideration of its cash surrender therefore, this corporation does hereby sell and assign to Catherine Rath, wife and nominee of B. Joseph Rath * * *"

He then states this "clearly demonstrates who *exercised the option* to acquire the policy" inferring that it was the decedent.

We are unable to follow this logic. We understand that it takes some action on the part of a person to exercise an option.[1] We fail to see any affirmative action on the part of the decedent whereby he did anything to exercise the option by purchasing the policy himself and taking title to it so that he could pass it on to his wife. The resolution referred to was the resolution of the corporation. In it the *corporation*

> "does hereby sell and assign to Catherine Rath, wife and nominee of B. Joseph Rath, its ownership and rights in the life insurance policy numbered 28730243 in the face amount of $100,000 covering the life of B. J. Rath issued by the Prudential Insurance Company."

The naming of his wife, Catherine, as his nominee to receive what he had a right to receive did not constitute an exercise of the option.

As we have stated heretofore, we cannot accept the inference of the trial judge that the decedent exercised the option.

Therefore, we must conclude that the insurance policy, involved herein, was transferred by the corporation to Catherine Rath, wife of the deceased, for a valuable consideration.

Counsel for plaintiffs argues that the transaction involved herein was part sale by the corporation and part gift by the decedent and that, therefore, the decedent had an interest in the policy. The basis of this argument is that the corporation's value or interest was the cash surrender value of $11,600, whereas, at the time of the transfer, it was agreed that the value of the policy for gift or estate tax purposes was $17,520.24.

We find no merit to this claim. At the time of the transfer the corporation was the sole and exclusive owner of the policy. We hold that the decedent had only an option to purchase and that he never exercised that option. He only directed that the corporation sell it to his nominee, his wife. The policy was sold for $11,600, which was the value the corporation placed on it.

Finally, it is claimed that even though the decedent did not exercise his option to purchase, he had an interest in the policy, the proceeds on which policy are not subject to income taxation, pursuant to a March 27, 1976 private letter ruling of the Internal Revenue Service. While it has not been cited to this Court, we do note that the Service has since issued Revenue Ruling 79–46, which ruling is to the same effect as the private ruling.

Both the private ruling and the revenue ruling deal with determining whether a decedent had any "incidents of ownership", within the meaning of § 2042(2) of the Internal Revenue Code, over insurance policies on his life, which policies were owned by the decedent's employer. The decedent in both rulings was found to have such an incident of ownership by virtue of his right, under stated circumstances, to prevent the employer's termination of the policy by purchasing the policy for its cash surrender value. Accordingly, the insurance proceeds, reduced by the cash surrender value at the time of death, were found to be includible in the decedent's gross estate for estate tax purposes.

---

1. "The general rule is that an option contract vests no right, legal or equitable, in the optionee in the subject matter of the contract prior to his acceptance of the terms of the option." *Warner & Swasey Co. v. Rusterholz*, D.C., 41 F.Supp. 498, 503 (1941).

260

The private ruling and the revenue ruling would appear to support the view that decedent Rath herein possessed an incident of ownership in the policy for the estate taxation purposes. They do not, however, require the conclusion that Rath was possessed of ownership of the policy or that he had a property interest in that policy.

On the contrary, the phrase "incidents of ownership," as used in the Internal Revenue Code, is broader than the traditional concept of ownership. As provided in Treasury Regulation § 20.2042–1(c)(2):

"The term 'incidents of ownership' is not limited in its meaning to ownership of the policy in the technical legal sense."

We conclude that the transfer herein in question was a transfer of an insurance contract from the corporation to the wife of the decedent for a valuable consideration. Thus, in accordance with paragraph (1) of Sec. 101(a), the amount excluded as income from the proceeds of the policy shall not exceed an amount equal to the sum of the actual value of such consideration and the premiums subsequently paid by the transferee. Neither of the exceptions (A) or (B) are applicable to the transferee, herein, the wife of the decedent.

We reverse the judgment of the District Court and remand the case with instructions to dismiss the complaint.

## APPENDIX A

### SCHEDULE A

Amended Gift Tax Return for calendar year 1968 (Form 709), re Joseph [a/k/a B. Joseph and as Balthasar Joseph] Rath, date of death—4/23/70, Social Security No. 376–09–3000.

Explanation:

On March 15, 1968 the following transfers, by gift, were made to Donor's wife, to-wit, Catherine A. Rath, viz:

Item 1:

Transfer of Donor's rights to the ownership of a life policy, No. 28,730,243, dated February 19, 1964, issued by the Pruden-tial Insurance Company of America insuring the life of B. Joseph Rath (the Donor) in the face amount of $100,000.00. On the date of this transfer, to-wit, March 15, 1968, said policy had a net value for gift tax purposes of $17,520.24. The ownership of said policy, prior to March 15, 1968, was in the name of the J. B. Rath Company, a Michigan corporation, of which Donor was a stockholder. As of March 15, 1968, the Donor sold his entire stock interest in said corporation to third parties. Consistent with Donor's contractual rights in a certain agreement, entitled "Life Insurance Trust and Stock Purchase Agreement" between the J. B. Rath Company and the Donor, entered into concurrently with the issuance of said policy, Donor elected to have the ownership of said policy transferred to himself at the termination of his status as a stockholder in said corporation upon his payment of the then cash surrender value of the policy, to-wit, the sum of $11,-600.00. Donor, simultaneously therewith, transferred this right and the cash surrender value to his wife (Catherine A. Rath). Photocopy of the Life Insurance Trust and Stock Purchase Agreement is herewith attached. Also attached is Treasury Form 938 of the Prudential Insurance Company for reference. Since these computations were based upon the April 17, 1968 date, they were not used in preparing the enclosed return. It is to be noted that the carrier treats the date of the gift, April 17, 1968, rather than the March 15, 1968 date which was the date the documents were executed and delivered. Attached hereto also is the carrier's explanatory letter relative to this confusion in dates. The value of the policy, for gift tax purposes per the carrier's computations as of March 15, 1968, was determined as follows:

| | | |
|---|---|---|
| a. | Terminal reserve as of 3/15/68 | $10,375.00 |
| b. | Proportionate unused group premium | 5,350.43 |
| c. | Adjusted dividends at that time | 1,776.81 |
| | Total | $17,520.24 |

(The cash surrender value of $11,600.00 is included in this amount and consti-

tuted part of the proceeds of sale realized by Donor from the sale of his common stock interest in the J. B. Rath Company.)

Item 2:

Of the proceeds of sale of said common stock interest, Donor further transferred funds totaling .............. $54,400.00

TOTAL GIFTS TRANSFERRED ON 3/15/68 ................ $71,920.24

It was considered necessary to amend the return as initially filed since the return, as initially filed, failed to properly allocate the marital deduction. Additionally, the initial return as filed failed to reflect the assignment, by Donor, of his rights to the ownership of the life policy noted under Schedule A above of this amended return.

The initial return as filed reflects a total of $66,000.00 as constituting the total value of the gifts as made, failing to reflect that of the $66,000.00 the sum of $11,600.00 constituted in part the transfer of the rights and interests in the life insurance policy.

It will be noted that the Donor died on April 23, 1970. Attached hereto is a certified copy of the fiduciary's Letters Testamentary as Executor of the Estate of B. Joseph Rath, Deceased.

Also attached is a remittance in the amount of $77.58, comprising payment of the principal of the tax, $66.60, due as reflected in this amended tax return, plus interest of $11.98.

Preparer:

Sebastian A. Buffa, Attorney
2331 Commonwealth Building
Detroit, Michigan (48226)
Phone: (313) 961–3368